# UNITED STATES *v.* SUTTON.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WASHINGTON.

No. 312.    Submitted October 15, 1909.—Decided December 20, 1909.

*United States* v. *Celestine, ante,* p. 278, followed, as to continuance of jurisdiction of United States over offenses committed within the limits of an Indian reservation.

The Indians, as wards of the Government, are the beneficiaries of the prohibition against the introduction of liquor into Indian country; and, under the Washington enabling act, jurisdiction and control over Indian lands remains in the United States, and Congress has power to prohibit and punish the introduction of liquor therein.

The limits of an Indian reservation are not changed by allotments in severalty during the trust period, and, where the lands allotted are subject to restrictions against alienation and to defeasance, the prohibition against liquor continues to be effective.

THE defendants were indicted in the District Court of the United States for the Eastern District of Washington for introducing liquor into the Indian country, as thus stated in the indictment:

"To wit, into and upon a certain Indian allotment No. 670, within the limits of the boundary of the Yakima Indian Reservation, in the Eastern District of Washington, which said allotment had theretofore been allotted to a certain Indian, a member of the Yakima tribe of Indians, named George Wesslike, under and by virtue of the provision of the act of Congress of February 8, 1887, entitled 'An act to provide for the allotment of lands in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and the Territories over the Indians, and for other purposes,' (24 Stat. 388,) said allotment being then and now one held in trust by the Government for said allottee and being inalienable by the said allottee without the consent of the United States."

A demurrer was filed, and on that demurrer the following facts were agreed to:

"1. That the Yakima Indian Reservation, in the Eastern District of Washington, is inhabited by the Yakima and other Indians under the general charge and control of an Indian agent and superintendent of the United States.

"2. That prior to September 3, 1908, a very large number of allotments of land within said reservation had been made to Indians entitled thereto, which said allotments had been made and allotted under and by virtue of the provision of the act of Congress of February 8, 1887, known as the general allotment act.

"3. That allotment No. 670, described in the indictment, is a part of and within the boundaries of the Yakima Indian

Reservation, and the same had been made and allotted, and the usual trust patent thereto issued to the allottee named in the indictment under the provision of the act of February 8, 1887, prior to September, 1908.

"4. That the trust limitation has not yet expired and the title to said allotment is still being held in trust by the Government; that the title to said allotment is not alienable by the allottee without the consent of the United States.

"5. That on or about September 3, 1908, the defendants did go on and upon said allotment described in the indictment, taking and carrying with them certain ardent spirits and intoxicating liquor, to wit, alcohol, in a demijohn and flasks."

The indictment was founded on the act of January 30, 1897, 29 Stat. 506, which provides:

"That . . . any person who shall introduce or attempt to introduce any malt, spirituous, or vinous liquor, including beer, ale, and wine, or any ardent or intoxicating liquor of any kind whatsoever into the Indian country, which term shall include any Indian allotment while the title to the same shall be held in trust by the Government, or while the same shall remain inalienable by the allottee without the consent of the United States, shall be punished by imprisonment for not less than sixty days, and by a fine of not less than one hundred dollars for the first offense and not less than two hundred dollars for each offense thereafter."

The Yakima Reservation was established under the treaty of June 9, 1855, 12 Stat. 951, which, in article 2, provides:

"All which tract shall be set apart, and, so far as necessary, surveyed and marked out, for the exclusive use and benefit of said confederated tribes and bands of Indians, as an Indian reservation; nor shall any white man, excepting those in the employment of the Indian Department, be permitted to reside upon the said reservation without permission of the tribe and the superintendent and agent.

    *      *      *      *      *      *      *      *

"ARTICLE VI. The President may, from time to time, at his discretion, cause the whole or such portions of such reservation as he may think proper, to be surveyed into lots, and assign the same to such individuals or families of the said confederated tribes and bands of Indians as are willing to avail themselves of the privilege, and will locate on the same as a permanent home, on the same terms and subject to the same regulations as are provided in the sixth article of the treaty with the Omahas, so far as the same may be applicable."

The demurrer was sustained, and thereupon the Government brought the case here on writ of error under the act of March 2, 1907, c. 2564, 34 Stat. 1246.

*Mr. Assistant Attorney General Harr* for the United States.

There was no appearance or brief for the defendant in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The question whether the indictment charges any offense against the laws of the United States involves the validity of the act of January 30, 1897, as applied to the facts stated, and therefore the case is one properly before us under the act providing for writs of error in certain instances in criminal cases. Ch. 2564, 34 Stat. 1246; *United States* v. *Keitel*, 211 U. S. 370, 397.

We have recently considered, in *United States* v. *Celestine*, *ante*, the question of the jurisdiction of the United States over offenses committed within the limits of a reservation, as also the effect of allotments therein upon its continued existence, and further discussion of those matters is unnecessary. The limits of the Yakima Reservation were not changed by virtue of the allotments that are referred to in the stipula-

tion of facts. The lands allotted were subject to restrictions against alienation, and the title which was conferred by the allotments was subject to defeasance. Sixth Article, Treaty with the Omahas, 10 Stat. 1043–5; *United States* v. *Celestine.* The offense charged was not one committed by a white man upon a white man, *United States* v. *McBratney,* 104 U. S. 621; *Draper* v. *United States,* 164 U. S. 240, or by an Indian upon an Indian, *United States* v. *Celestine, ante,* but it was the introduction of liquor into an Indian reservation. In this offense neither race or color are significant. The Indians, as wards of the Government, are the beneficiaries, but for their protection the prohibition is against all, white man and Indian alike. Legislation of this nature has been for a long time in force. Fourth sec., chap. 174, Laws 1832, 4 Stat. 564; § 2139, Rev. Stat. If the Yakima Reservation were within the limits of a Territory there would be no question of the validity of the statute under which this indictment was found, but the contention is that the offense charged is of a police nature and that the full police power is lodged in the State, and by it alone can such offenses be punished. By the second paragraph of § 4 of the enabling act with respect to the State of Washington, (c. 180, 25 Stat. 677,) the people of that State disclaimed all right and title "to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States." Construing this, in connection with other provisions of the enabling act, it was held in *Draper* v. *United States,* 164 U. S. 240, that it did not deprive the State of jurisdiction over crimes committed within a reservation by others than Indians or against Indians, following in this *United States* v. *McBratney,* 104 U. S. 621. But in terms "jurisdiction and control" over Indian lands remain in the United States, and there being nothing in the

section withdrawing any other jurisdiction than that named in Draper v. United States, undoubtedly Congress has the right to forbid the introduction of liquor and to provide punishment for any violation thereof. Couture, Jr., v. United States, 207 U. S. 581. It is true that only a per curiam opinion was filed in that case, and the judgment was affirmed on the authority of United States v. Rickert, 188 U. S. 432; McKay v. Kalyton, 204 U. S. 458, but an examination of the record shows that its facts are similar to those in the present case. See also an opinion by Shiras, District Judge, in United States v. Mullin, 71 Fed. Rep. 682, and one by Circuit Judge Van Devanter, speaking for the Circuit Court of Appeals for the Eighth Circuit, in Rainbow v. Young, 161 Fed. Rep. 835.

Without pursuing the discussion further, we are of opinion that the District Court erred in its ruling, and the judgment is

*Reversed.*