## HALLOWELL *v.* UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 89. Argued March 16, 1911.—Decided May 15, 1911.

The power of the United States to make rules and regulations respecting tribal lands, the title to which it has not parted with, although allotted, is ample. *Tiger* v. *Western Investment Co., ante,* p. 286.

The mere fact that citizenship has been conferred on allottee Indians does not necessarily end the right or duty of the United States to pass laws in their interest as a dependent people; and so held that the prohibitions of the act of January 30, 1897, c. 109, 29 Stat. 506, against introduction of liquor into Indian country, are within the power of Congress.

When, under the act of August 7, 1882, c. 434, 22 Stat. 341, an allotment in severalty has been made to a tribal Indian out of lands in a tribal reservation in the State of Nebraska, and a trust patent therefor has been issued to the allottee, and when the provisions of § 7 of that act and of § 7 of the act of February 8, 1887, c. 119, 24 Stat. 388, have been effective as to such allottee, the fact that the United States holds the lands so allotted in trust for the allottee, or, in case of his decease, for his heirs, as provided in § 6 of the said act of 1882, enables, authorizes and permits the United States to regulate and prohibit the introduction of intoxicating liquors upon

such allotment during the limited period for which the land so
allotted is so held in trust by the United States.

THE facts, which involve the authority of Congress to
regulate the introduction of liquor into lands of allottee
Indians, and the construction of provisions of the acts of
August 7, 1882, and February 8, 1887, in regard to Indian
allotments, and of the act of January 30, 1897, in regard
to introduction of liquor into Indian country, are stated
in the opinion.

*Mr. Thomas L. Sloan* for plaintiff in error.

*Mr. Assistant Attorney General Harr* for the United
States.

MR. JUSTICE DAY delivered the opinion of the court.

Simeon Hallowell, plaintiff in error, was convicted in the
District Court of the United States for the District of
Nebraska upon the charge of having introduced whiskey
into the Indian country in violation of the act of Janu-
ary 30, 1897, c. 109, 29 Stat. 506. After sentence, Hallo-
well took the case to the Circuit Court of Appeals for the
Eighth Circuit, and that court certified to this court the
question hereinafter set forth.

The certificate sets forth an agreed statement of facts
upon which the case was tried in the District Court, as
follows:

"That the defendant, Simeon Hallowell, an Omaha
Indian, is and was on the first day of August, 1905, an
allottee of land granted to him on the Omaha Indian
Reservation, in Thurston County, Nebraska; that the
allotment so made to him was made under the provisions
of the act of Congress of August 7, 1882 (22 Statutes at
Large, 341); that the first or trust patent was issued to him
in the year 1884, and that the twenty-five year period of
the trust limitation has not yet expired: and that the fee

title of the allotment so made to him is still held by the
United States.

"That the defendant, Simeon Hallowell, on the first
day of August, 1905, procured at a point outside the said
reservation one-half gallon of whiskey which he took to
his home, which was within the limits of the Omaha In-
dian Reservation, and upon an allotment which he had
inherited and which allotment was made under the pro-
visions of the act of Congress, of August 7, 1882, and the
title of which is held by the Government, as the twenty-
five year trust period has not expired. That he took the
said whiskey into and upon this allotment for the purpose
of drinking and using the same himself, and that he did
drink said whiskey and did give some of it to his friends
or visitors to drink.

"That the said Omaha Indian Reservation has been
allotted practically in whole and that many of the allot-
ments of deceased Omaha Indians have been sold to white
people, under the provisions of the Act of Congress of
May 27, 1902 (32 Statute at Large, 245, 275); that within
the original boundary limits of the Omaha Indian Reserva-
tion, there are many tracts of land that have been sold,
under the provisions of said act, to white persons who are
the sole owners thereof, and that the full title to such
lands has passed to the purchaser, the same as if a final
patent without restriction upon alienation had been issued
to the allottee.

"That all of the Omaha Indians who were living in the
year 1884, and by law entitled to allotments, received
them.

"That the Omaha Indian Reservation is within and a
physical part of the organized territory of the State of
Nebraska, as are also the allotments herein referred to,
into and upon which the said defendant took said whiskey.
That the Omaha Indians exercise the rights of citizenship,
and participate in the County and State Government ex-

tending over said Omaha Indian Reservation, and over and upon the allotments herein referred to. That the defendant, Simeon Hallowell, has been on frequent occasions a Judge and Clerk of election, a Justice of the Peace, an Assessor, and a Director of the public school district in which he lives. That Omaha Indians have taken part in the State and County government, extending over the reservation, and have held the following offices in said county of Thurston, State of Nebraska: County Coroner, County Attorney, County Judge, Justice of the Peace, Constable, Road Overseer, Election Officers, and have also served as jurors in the county and district Courts. Defendant is self-supporting, as are most of said Indians. Some of them are engaged in business and most of them engaged in farming."

Upon this statement the Circuit Court of Appeals certified to this court the following question:

"When, under the act of August 7, 1882 (c. 434, 22 Stat. 341), an allotment in severalty has been made to a tribal Indian out of lands in a tribal reservation in the State of Nebraska, and a trust patent therefor has been issued to the allottee, and when the provisions of section 7 of the said act of August 7, 1882, and of section 6 of the act of February 8, 1887 (c. 119, 24 Stat. 388), have become effective as to such allottee, does the fact that the United States holds the land so allotted in trust for the allottee, or, in case of his decease, for his heirs, as provided in section 6 of the said act of August 7, 1882, enable, authorize or permit the United States to regulate or prohibit the introduction of intoxicating liquors upon such allotment during the limited period for which the land so alloted is so held in trust by the United States?"

Under the act of August 7, 1882, first mentioned in the certificate, provision was made for the allotment of lands in severalty among the Indians. Section 6 of the act provides in part:

"SEC. 6. That upon the approval of the allotments provided for in the preceding section by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect and declare that the United States does and will' hold the land thus allotted for the period of twenty-five years in trust for the sole use and benefit of the Indians to whom such allotment shall have been made, or in case of his decease, of his heirs, according to the laws of the State of Nebraska, and that at the expiration of said period the United States will convey the same by patent to said Indian or his heirs as aforesaid, in fee discharged of said trust and free of all charge or incumbrance whatsoever."

As appears from the certificate upon which this case is submitted the trust period named in the section had not expired at the time the alleged offense was committed.

Section 7 of the act of August 7, 1882, provides:

"SEC. 7. That upon the completion of said allotments and the patenting of the lands to said allottees, each and every member of said tribe of Indians shall have the benefit of, and be subject to, the laws, both civil and criminal, of the State of Nebraska; and said State shall not pass or enforce any law denying any Indian of said tribe the equal protection of the law."

Section 6 of the act of February 8, 1887, c. 119, 24 Stat. 388, referred to in the question propounded, provides:

"SEC. 6. That upon the completion of said allotments and the patenting of the lands to said allottees, each and every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the State or Territory in which they may reside; and no Territory shall pass or enforce any law denying any such Indian within its jurisdiction the equal protection of the law. And every Indian born within the territorial limits of the United States to whom allotments shall have been

made under the provisions of this act, or under any law or treaty, and every Indian born within the territorial limits of the United States who has voluntarily taken up within said limits his residence, separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges and immunities of such citizens, whether said Indian has been or not, by birth or otherwise, a member of any tribe of Indians within the territorial limits of the United States, without in any manner impairing or otherwise affecting the right of any such Indian to tribal or other property."

It is apparent that at the time of the commission of the alleged offense the place wherein it was alleged to have been committed was a part of lands allotted to an Indian; that the title to the lands allotted was still held in trust by the United States for the benefit of the Indian to whom the allotment had been made; that the plaintiff in error had been declared to be a citizen of the United States, and entitled to the rights, privileges and immunities of such citizenship, and entitled to the benefit of the laws, civil and criminal, of the State of Nebraska, in which the Indian allotment was situated, and upon which the offense is alleged to have been committed.

The act under which the conviction was had was passed January 30, 1897, c..109, 29 Stat. 506, and provides in part:

"That any person who shall introduce or attempt to introduce any malt, spirituous, or vinous liquor, including beer, ale, and wine, or any ardent or intoxicating liquor of any kind whatsoever into the Indian country, which term shall include any Indian allotment while the title to the same shall be held in trust by the Government, or while the same shall remain inalienable by the allottee without the consent of the United States, shall be punshed by imprisonment for not less than sixty days, and by fine of not less than one hundred dollars for the first of-

fense and not less than two hundred dollars for each offense thereafter.".

. Obviously this act in terms embraced the acts stated in the agreed statement of facts, which we have set forth above. The liquor was introduced into the Indian country and into an Indian allotment, while the title to the same was still held in trust by the Government.

The contention of the plaintiff in error is that the act cannot be applied to him because at the time charged he had become a citizen and not subject to such regulation as a ward of the Government; and furthermore that the territory in question had become subject to the jurisdiction of the State of Nebraska, to whose police regulations upon the subject of the liquor traffic he was alone amenable.

When this case was certified here, *Matter of Heff*, 197 U, S. 488, had been decided, but the subsequent cases of the *United States* v. *Celestine*, 215 U. S. 278, and *United States* v. *Sutton*, 215 U. S. 291, were yet undetermined. We had occasion to consider these cases in *Tiger* v. *Western Investment Company, ante,* p. 286, and need not here repeat what was there said concerning them.

In *United States* v. *Sutton*, 215 U. S. *supra*, it was held that a conviction could be had under the act of January 30, 1897, 29 Stat., *supra*, for the offense of introducing liquor into an Indian reservation. It is true that in the *Sutton Case* the reservation was within the limits of the State of Washington, and that State had disclaimed jurisdiction over Indian lands which were to remain under the absolute jurisdiction and control of the Congress of the United States, and, it was held, that while this fact did not deprive the State of the right of punishing crimes committed on such reservation by other than Indians or against Indians (*Draper* v. *United States*, 164 U. S. 240), that where jurisdiction and control over Indian lands remained in the United States, Congress had the right to forbid the intro-

duction of liquor into such territory, and to provide for the punishment of those found guilty thereof. *Couture, Jr.* v. *United States,* 207 U. S. 581, was cited where a conviction for introducing liquor into the Indian country was affirmed.

In the case at bar, the United States had not parted with the title to the lands, but still held them in trust for the Indians. In that situation its power to make rules and regulations respecting such territory was ample. *Van Brocklin* v. *Tennessee,* 117 U. S. 151, 167; *Gibson* v. *Choteau,* 13 Wall. 92, 99; *Light* v. *United States,* 220 U. S. 523.

It is a result of the recently decided cases in this court, *Couture, Jr.* v. *United States,* 207 U. S. 581; *United States* v. *Celestine,* 215 U. S. 278; *United States* v. *Sutton,* 215 U. S. 291, and *Tiger* v. *Western Investment Company, ante,* p. 286, that the mere fact that citizenship has been conferred upon Indians does not necessarily end the right or duty of the United States to pass laws in their interest as a dependent people. A discussion of the matter in those cases renders further comment unnecessary now. Furthermore, in the present case liquor was introduced into an allotment the title to which was still held by the United States, and concerning which it had the power to make rules and regulations under the authority of the Constitution of the United States. While for many purposes the jurisdiction of the State of Nebraska had attached, and the Indian as a citizen was entitled to the rights, privileges, and immunities of citizenship, still the United States within its own territory and in the interest of the Indians, had jurisdiction to pass laws protecting such Indians from the evil results of intoxicating liquors as was done in the act of January 30, 1897, which made it an offense to introduce intoxicating liquors into such Indian country, including an Indian allotment. In this view, the question certified will be answered in the affirmative, and

*It is so ordered.*