UNITED STATES v. APPLE et al.

(District Court, D. Kansas, Third Division. October 7, 1919.)

No. 110–N.

1. INDIANS ⟨⟩27(1)—UNITED STATES MAY MAINTAIN SUIT TO PREVENT INDIANS FROM BEING DESPOILED OF ROYALTIES UNDER LEASE APPROVED BY GOVERNMENT REPRESENTATIVES.

Where it was alleged that ignorant Quapaw Indians, who had with authority of the representatives of the government leased oil lands, were being despoiled of the royalties through the fraud and machinations of defendants, the government not only has the right, but also it is its duty, to maintain suit to protect the Indian lessors, for they were still in a state of tutelage and wards of the United States.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2.** INDIANS ☞27(6)—BILL BY UNITED STATES AGAINST DEFENDANTS, WHO WERE DESPOILING INDIAN LESSEES OF ROYALTIES, HELD TO STATE A CAUSE OF ACTION.

A bill alleging that defendants, one of whom held power of attorney from Indian lessees, still in the state of tutelage, had conspired and were defrauding the lessees of the profits from oil leases made with consent of the representatives of the government, *held* to state a cause of action.

In Equity. Suit by the United States against Walter T. Apple and others. On separate motions of several defendants to dismiss. Motions denied.

Fred Robertson, of Kansas City, Kan., J. A. Tellier, of Little Rock, Ark., and Joseph W. Howell, of Washington, D. C., for plaintiff.

Edward E. Sapp, S. C. Westcott, and E. B. Morgan, all of Galena, Kan., A. M. Keene, of Ft. Scott, Kan., E. S. Bessey and G. W. Earnshaw, both of Joplin, Mo., Al F. Williams and G. W. Staton, both of Columbus, Kan., Garland Biffle, of Baxter Springs, Kan., Fred A. Walker, of Columbus, Kan., and P. E. Bradley, of Joplin, Mo., for defendants.

POLLOCK, District Judge. The facts alleged in the petition filed herein, in so far as necessary to decision of separate motions of certain defendants to dismiss, may be briefly stated as follows:

Benjamin and See-sah Quapaw, full-blooded, ignorant Quapaw Indians, through allotment and inheritance, being the owners of three tracts of land in Ottawa county, Okl., described in the petition, in due form of law made certain mining leases covering the same, reserving as rental certain royalties in the minerals to be produced therefrom. The mining operations conducted by the lessors under said mining leases on said properties proved to be very successful, to the extent between the 13th day of March, 1915, and the 31st day of December, 1917, the cash royalties paid to the Indian lessees under and by virtue of said mining leases amounted to as much as $178,000. It is charged in the bill said Indian lessees, being ignorant of business affairs and unlearned, were induced to and did make to a Quapaw Indian relative, defendant herein, Charles Goodeagle, a certain power of attorney, set forth in the pleadings, purporting to empower him as attorney in fact to collect the royalties of lessees arising from said mining operations, to deposit the same from time to time to the credit of lessees in the Baxter National Bank, of Baxter Springs, defendant herein, and, further, to check out from said bank and expend said royalty moneys for the use and benefit of the Indian lessees, however, in a certain and definite manner stated in said power of attorney only, and none other; that said power of attorney, after its making, was lodged with and retained by said bank for the purpose it might at all times be fully informed and know the contents of said instrument, and before payment of any check drawn on said account, if the same was authorized by the power conferred on said attorney in fact, Charles Goodeagle. Thereafter said attorney in fact, and said national bank, and its officers, in violation of the trust reposed in them by the Indian lessees, by virtue of the terms of said power of attorney, and conspiring together and

with the other defendants named in the bill, and for the purpose of wronging and defrauding said Indian lessees out of their vast sums of royalties so accruing, and for the purpose of converting said royalty moneys to the use and benefit of defendants, from time to time, in violation of the terms of said power of attorney, and of the trust reposed in them, the bank and the attorney in fact caused said royalty moneys to be checked out of said bank and expended in the purchase and improvement of many tracts of land purchased from the different defendants named in the bill, and, further, said attorney in fact, in violation of his trust, but conspiring with other defendants named herein, seeking to wrong and defraud said Indian lessees of the property and property rights, did make, or cause to be made, in the name of said lessees, promissory notes and other contracts, obligating or attempting to bind said lessees to the payment of large sums of money to certain other defendants named in the bill, all as particularly described and pleaded in the many paragraphs of the voluminous petition, as a result and by reason of all of which conspiracies and fraudulent acts on the part of defendants, said lessees have been despoiled and defrauded out of their vast property rights in more than $200,000. Wherefore the government, acting for said Indian lessees, prays the decree of this court canceling and annulling said fraudulent transactions and contracts, that it may have an accounting with each and all of the defendants named herein so procuring any part of said royalty moneys, and, on said accounting being taken and stated, a decree for the same may enter in favor of plaintiff, to the use and benefit of the lessees in any case wherein said royalty funds can be traced in property now held by defendants, or any of them; that the same may be decreed a trust fund, and a lien on the property thereby purchased, said lien foreclosed, and the property ordered sold in satisfaction of said trust lien; that defendant holders of said promissory notes, and other contract obligations made by or in the name of said lessees now in the possession of defendants, be ordered to turn same into court, and a decree entered canceling and annulling the same, and for other and general relief.

To this petition so charging defendants have appeared. Some have fully answered thereto; some others have filed separate motions to dismiss the case. Said motions, principally, are based on the ground the government has no interest in or right of suit to correct the wrongs of the Indian lessees of which complaint is made in the petition. Said motions stand briefed, argued, and submitted for decision.

[1] In support of the motions to dismiss it is urged by defendants the tracts of land out of which the royalty moneys arose are the absolute property, in fee simple, of their Quapaw Indian owners; hence, it is contended, as a necessary sequence the royalties paid from mining operations conducted thereon are the absolute and unconditioned property of the Indian owners, from all of which it is said to result said Quapaw Indian owners in their own persons and right, and not the government, must sue to correct the alleged wrongs complained of in the petition. On the contrary, the government contends and urges the Indian lessees were both in fact and law incompetent to make a valid

mining lease of said properties without the approval of the accredited representative of the government, and, further, were not alone incompetent in fact and law to make said power of attorney authorizing Charles Goodeagle to collect and expend said royalties money, when made, but over and above all such contentions, at all times said Quapaw Indian lessees were the wards of the government, and their property and property rights were, by reason of the national policy of the government towards such wards, under the protecting and fostering care which the sovereign, as the guardian of the persons and estates of its wards, owes to right such wrongs as are done them while this relation continues to exist, which exists and will continue to exist until the law-making power of the government shall terminate the same.

Without at this time attempting to determine precisely what title and right the Indian lessees have in the lands from which the mining royalties accrue, or the question of the power of said Indian owners to make mining leases on said properties without the consent and approval of the representatives of the government, or other contracts with relation thereto, or royalties accruing from mining operations conducted thereon, yet I am of the opinion the government may bring and maintain this suit in its capacity as guardian or protector of the estates of its Indian wards, the lessees, and, further, under the charges made in the bill in this case, it was its duty to so do, for, although it may in the end appear the power of attorney under which Charles Goodeagle acted in collecting the royalties and depositing the same in bank be held to have been a valid instrument of writing, yet it cannot be held the estate of wards of the government may be despoiled and dissipated, as charged in this bill, through fraud, collusion, and combination to accomplish such purpose, with the knowledge and consent of the bank and its officers in which the moneys were deposited, and the other alleged conspirators, to their use and benefit, all as alleged by plaintiff. I think this proposition is fully settled and established in the following adjudicated cases controlling or persuasive here:

In United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532, Mr. Justice Harlan, delivering the opinion of the court, says:

"Some observations may be made that are applicable to the whole case. It is said that the state has conferred upon these Indians the right of suffrage and other rights that ordinarily belong only to citizens, and that they ought, therefore, to share the burdens of government like other people who enjoy such rights. These are considerations to be addressed to Congress. It is for the legislative branch of the government to say when these Indians shall cease to be dependent and assume the responsibilities attaching to citizenship."

In United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844, Mr. Justice Hughes, delivering the opinion of the court, says:

"The Quapaws are still under national tutelage. The government maintains an agency, and, pursuant to the treaty of May 13, 1833 (7 Stat. 424), an annual appropriation is made for education and other assistance (37 Stat. 530). In 1893 the Quapaw National Council made provisions for allotments in severalty, which were to be subject to the action of Congress, and in the act of ratification of 1895 Congress imposed the restriction upon alienation which has been quoted. The guardianship of the United States continues, notwithstanding the citizenship conferred upon the allottees. United States v. Celestine,

215 U. S. 278, 291 [30 Sup. Ct. 93, 54 L. Ed. 195]; Tiger v. Western Investment Co., 221 U. S. 286, 315, 316 [31 Sup. Ct. 578, 55 L. Ed. 738]; Hallowell v. United States, 221 U. S. 317, 324 [31 Sup. Ct. 587, 55 L. Ed. 750]; United States v. Sandoval, 231 U. S. 28, 48 [34 Sup. Ct. 1, 58 L. Ed. 107]."

In United States v. Nice, 241 U. S. 591, 36 Sup. Ct. 696, 60 L. Ed. 1192, Mr. Justice Van Devanter, delivering the opinion for the court, says:

"It was said in United States v. Kagama, 118 U. S. 375, 383 [6 Sup. Ct. 1109, 30 L. Ed. 228]: 'These Indian tribes are the wards of the nation. They are communities dependent on the United States. * * * From their very weakness and helplessness, so largely due to the course of dealing of the federal government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power.' What was said in these cases has been repeated and applied in many others"—citing United States v. 43 Gallons of Whiskey, 93 U. S. 188, 23 L. Ed. 846; Dick v. United States, 208 U. S. 340, 28 Sup. Ct. 399, 52 L. Ed. 520; United States v. Sutton, 215 U. S. 291, 30 Sup. Ct. 116, 54 L. Ed. 200; Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248; United States v. Wright, 229 U. S. 226, 33 Sup. Ct. 630, 57 L. Ed. 1160; United States v. Sandoval, 231 U. S. 28, 34 Sup. Ct. 1, 58 L. Ed. 107; United States v. Pelican, 232 U. S. 442, 34 Sup. Ct. 396, 58 L. Ed. 676; Perrin v. United States, 232 U. S. 478, 34 Sup. Ct. 387, 58 L. Ed. 691; Johnson v. Gearlds, 234 U. S. 422, 34 Sup. Ct. 794, 58 L. Ed. 1383; Joplin Mercantile Co. v. United States, 236 U. S. 531, 545, 35 Sup. Ct. 291, 59 L. Ed. 705.

"Of course, when the Indians are prepared to exercise the privileges and bear the burdens of one sui juris, the tribal relation may be dissolved and the national guardianship brought to an end, but it rests with Congress to determine when and how this shall be done, and whether the emancipation shall at first be complete or only partial. Citizenship is not incompatible with tribal existence or continued guardianship, and so may be conferred without completely emancipating the Indians or placing them beyond the reach of congressional regulations adopted for their protection,"—citing United States v. Holiday, 3 Wall. 407, 18 L. Ed. 182; Cherokee Nation v. Hitchcock, 187 U. S. 294, 308, 23 Sup. Ct. 115, 47 L. Ed. 183; United States v. Rickert, 188 U. S. 432, 445, 23 Sup. Ct. 478, 47 L. Ed. 532; United States v. Celestine, 215 U. S. 278, 30 Sup. Ct. 93, 54 L. Ed. 195; Tiger v. Western Investment Co., 221 U. S. 286, 311–316, 31 Sup. Ct. 578, 55 L. Ed. 738; Hallowell v. United States, 221 U. S. 317, 324, 31 Sup. Ct. 587, 55 L. Ed. 750; Eells v. Ross, 64 Fed. 417, 12 C. C. A. 205; Farrell v. United States, 110 Fed. 942, 49 C. C. A. 183; Mulligan v. United States, 120 Fed. 98, 56 C. C. A. 50.

It follows, regardless of the fact whether the Quapaw Indian lessees, Benjamin and See-sah Quapaw, were or were not incompetent to make a valid mining lease on their lands, as that term is employed in the act of Congress of June 7, 1897 (30 Stat. 72, c. 3), and, further, regardless of the validity or invalidity of the power of attorney by said lessees made to Charles Goodeagle, yet, as the petition alleges, through the many conspiracies entered into between said attorney in fact and his codefendants in violation of the trust by the lessees reposed in their attorney, all with the knowledge of the defendant bank and its officers, the lessees were despoiled and defrauded of their property for the use and benefit of the conspirators, the government is interested, and is under the obligation and owes the duty to its Indian wards to bring and maintain this suit and to right the wrongs done by calling defendants to account. Brader v. James, 246 U. S. 88, 38 Sup. Ct. 285, 62 L. Ed. 591; United States v. Boylan (D. C.) 256 Fed. 468.

[2] Other objections to the petition are found stated in the motions to dismiss, such as the misjoinder of controversies, the nonjoinder of indispensable parties, want of equity, etc. These matters, however, I do not find urged with any insistence on the briefs and arguments of solicitors for the respective parties. If, as has been held, the plaintiff has legal capacity to maintain this suit, sufficient facts are found set forth in the bill to call for the interposition of a court of equity.

It follows, finding no ground to sustain the several motions to dismiss, they are denied. It is ordered moving parties are ruled to answer the bill within 20 days from the date of this memorandum.

It is so ordered.