### STATE OF MINNESOTA v. UNITED STATES.

### No. 12094.

Circuit Court of Appeals, Eighth Circuit.

Feb. 11, 1942.

V. J. Michaelson, Sp. Asst. Atty. Gen. of Minnesota (J. A. A. Burnquist, Atty. Gen. of Minnesota, Chester S. Wilson, Deputy Atty. Gen. of Minnesota, and Mandt Torrison, Sp. Asst. Atty. Gen. for the Department of Conservation of Minnesota, on the brief), for appellant.

638

W. Robert Koerner and Philip Nichols, Jr., Attys., Department of Justice, both of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen. of the United States, C. U. Landrum, Sp. Asst. to U. S. Atty., of Detroit Lakes, Minn., and C. R. Denny, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

This case involves the right of the United States to acquire, by a condemnation proceeding brought in the court below, lands belonging to the State of Minnesota which are devoted by the State to a public use.

A detailed statement of the factual situation, of the issues involved, and of the history of the litigation, together with a full discussion of the controlling questions of law, is contained in an opinion of the trial court reported in United States v. 4,450.72 Acres of Land, Clearwater County, State of Minnesota, D. C., 27 F.Supp. 167. In view of the completeness of that opinion, we shall as briefly as possible outline the facts, the questions presented and the applicable law, and state our conclusions.

Congress by the Act of June 23, 1926, 44 Stat. 763, as amended by the Act of July 24, 1935, 49 Stat. 496, provided for the creation of the "Wild Rice Lake Indian Reserve" out of an area in Clearwater County, Minnesota, consisting of Rice Lake and some 4,500 acres of contiguous land. The primary purpose was that of "conserving wild rice beds for the exclusive use and benefit of the Chippewa Indians of Minnesota." The Secretary of the Interior was authorized to acquire, by condemnation or otherwise, "lands within said reserved area now held in public, private, State, or Indian ownership."

On September 15, 1937, the United States brought this proceeding to condemn the various tracts of land included in the reserved area. The State, which in 1934 had acquired ownership or control of the area and of other lands for use as a conservation project for reforestation, game propagation and protection, and for public shooting grounds, subject to the exclusive right granted by the State to the Chippewa Indians to harvest wild rice on Rice Lake (see Mason's Minnesota Statutes, 1940 Suppl. §§6131-1 to 6131-21), filed objections to the petition of the United States for condemnation. In substance, the objections of the State were: that the Acts of June 23, 1926, and July 24, 1935, authorizing the condemnation of the area, were invalid because they were not in furtherance of any constitutional power delegated to the United States and that the taking authorized was not for a public use and not for a superior public use; that it would interfere with the sovereign rights of the State; and that the proceeding was not within the jurisdiction of the court.

The court, after a hearing and after taking testimony as to the character of the area and the uses to which the State had devoted it, overruled the objections, granted the petition, and appointed Commissioners to assess compensation. The Commissioners reported their awards, and the State and other affected property owners appealed therefrom. A trial was had before the court and a jury on the issues of compensation. In its verdict the jury made an award of compensation for each tract of land involved. The State owned at least nineteen tracts. It moved for a new trial with respect to only thirteen of them. The court denied its motion, and entered judgment on the verdict, ordering that, upon payment of the awards, title to the tracts vest in the United States. The State appealed from the judgment, but only with respect to the thirteen tracts referred to in its motion for a new trial, thereby permitting the awards for the other tracts owned by the State to stand unchallenged.

▇ In its statement of points relied upon, the State seeks to challenge: (1) The jurisdiction of the court; (2) the order granting condemnation; (3) the order denying a new trial; (4) "rulings of the court occurring during the trial;" (5) the verdict of the jury, which it asserts is "contrary to law" and "contrary to and unsupported by the evidence;" (6) and the judgment. The points other than those relating to jurisdiction and to the order granting condemnation, present nothing for review and will be disregarded.[1]

---

[1] Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481–483, 53 S. Ct. 252, 77 L.Ed. 439; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 436; Butler v. United States, 8 Cir., 108 F.2d 27, 28; Lawson v. United States, 8 Cir., 297 F. 418, 419.

██ The United States contends that the question of the validity of the order granting condemnation can not properly be considered, since the State has elected to retain the benefit of the judgment appealed from with respect to some of its lands. This, we think, is technically correct;[2] but in view of the fact that the State has been and is resisting the attempt of the Government to take any State lands in the area in suit, we think that, for the purpose of this opinion we may, without impropriety, treat the appeal of the State as though it were taken from the judgment with respect to all of its lands affected.

██ It is our opinion that the court below had jurisdiction of this proceeding. It is true that it is a civil controversy to which the State is a party. It is also true that Article III, § 2, clause 2, of the Constitution of the United States gives to the Supreme Court original jurisdiction in cases to which a State is a party, and that by § 233 of the Judicial Code, 28 U.S.C.A. § 341, Congress provided that that court should have exclusive jurisdiction of civil controversies to which a State is a party. But Congress, nevertheless, has power to grant concurrent jurisdiction of such cases to other federal courts.[3] By the Act of August 1, 1888, c. 728, § 1, 25 Stat. 357, 40 U.S.C.A. § 257, Congress authorized the bringing of every condemnation suit for the acquisition of lands for the United States in the United States District Court of "the district wherein such real estate is located." A proceeding such as this is local in character, is in rem against the land, and is only incidentally concerned with questions of title. It is the sort of proceeding which, for the convenience of all parties interested, should be brought in the district where the land is located. We think that Congress intended by the Act of August 1, 1888, to confer jurisdiction of all condemnation proceedings brought by the United States upon the District Courts of the United States, regardless of whether State lands are involved. Moreover, when Congress passed the Act of July 24, 1935, for the purpose of indicating that all lands in the area in suit, regardless of ownership, were to be acquired for this Indian reserve, it acted with knowledge that a prior petition for condemnation filed in the court below, pursuant to the Act of June 23, 1926, had been dismissed because it was thought that that Act did not clearly indicate an intent to take State lands. The amendment made in 1935 to the Act of 1926 was intended to remove all obstacles to further proceedings for condemnation in the court below. It is not conceivable to us that the Supreme Court was the only court in which this proceeding could have been brought.

██ We are of the opinion that the United States has the power to acquire by condemnation lands for use as an Indian Reservation which are suitable for that purpose, although the lands belong to a State and although the State has devoted them to a public use.

██ That the area involved in this proceeding is suitable for the purposes for which the United States proposes to acquire it, is conceded. The area lies in the northern part of Minnesota, in a sparsely settled region not far from Indian communities. Rice Lake is capable of producing large quantities of wild rice and has been resorted to by the Indians for many years. The area has little value for commercial or agricultural purposes. It is a feeding and breeding place for waterfowl and other game birds and animals. It is capable of furnishing food and occupation for the Indians. Whether the use of the area by the State for a conservation project, game refuge, and public shooting ground, with the right reserved to the Chippewa Indians to harvest wild rice, would be more advantageous to the public than the use to which the United States proposes to put the area, we think is a legislative question and not a judicial one. See and compare State of Oklahoma v. Guy F. Atkinson Co., 313 U.S. 508, 527, 61 S.Ct. 1050, 85 L.Ed. 1487. It was for Congress to say whether this project was justified in the national interest.

[2] Storley v. Armour & Co., 8 Cir., 107 F.2d 499, 504; Kaiser v. Standard Oil Co., 5 Cir., 89 F.2d 58, 59; Altman v. Shopping Center Building Co., 8 Cir., 82 F.2d 521, 527; Wilson v. Union Electric Light & Power Co., 8 Cir., 59 F.2d 580–583; Henry v. United States, 3 Cir., 46 F.2d 640, 642.

[3] Ames v. Kansas, 111 U.S. 449, 469, 4 S.Ct. 437, 28 L.Ed. 482; United States v. Louisiana, 123 U.S. 32, 8 S.Ct. 17, 31 L.Ed. 69; United States v. California, 297 U.S. 175, 187, 56 S.Ct. 421, 80 L.Ed. 567.

■ Neither the fact that the State owns the lands nor the fact that the taking of them will interfere with the State's program for the use and development of the area can prevent the United States from acquiring the lands. State of Oklahoma v. Guy F. Atkinson Co., 313 U.S. 508, 534, 535, 61 S.Ct. 1050, 85 L.Ed. 1487. There is no interference with the State's sovereignty by the United States if the taking of the lands represents a valid exercise of congressional power. United States v. Appalachian Electric Power Co., 311 U.S. 377, 428, 61 S.Ct. 291, 85 L.Ed. 243; State of Oklahoma v. Guy F. Atkinson Co., 313 U.S. 508, 534, 61 S.Ct. 1050, 85 L.Ed. 1487.

Whether the power of Congress to legislate with respect to the Indians is derived from its constitutional authority "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes" (Art. 1, § 8, clause 3), or from other powers delegated to the United States by the Constitution, or whether the universal recognition of the existence of the power resulted from necessity, is unimportant. That the power exists is not to be denied.

In United States v. Ramsey, 271 U.S. 467, 471, 46 S.Ct. 559, 560, 70 L.Ed. 1039, the Supreme Court said: "* * * Congress possesses the broad power of legislating for the protection of the Indians wherever they may be within the territory of the United States, * * * " See United States v. McGowan, 302 U.S. 535, 539, 58 S.Ct. 286, 82 L.Ed. 410. In United States v. Kagama, 118 U.S. 375, 383-385, 6 S.Ct. 1109, 1114, 30 L.Ed. 228, the Supreme Court, after stating that the Indian tribes are the wards of the nation, dependent upon the United States for their daily food and their political rights, and that they owe no allegiance to the States and receive no protection from them, said:

"From their very weakness and helplessness, so largely due to the course of dealing of the federal government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power. This has always been recognized by the executive, and by congress, and by this court, whenever the question has arisen.

\*   \*   \*   \*   \*

"The power of the general government over these remnants of a race once powerful, now weak and diminished in numbers, is necessary to their protection, as well as to the safety of those among whom they dwell. It must exist in that government, because it never has existed anywhere else * * * because it has never been denied; and because it alone can enforce its laws on all the tribes."[4]

■ That the United States may acquire by purchase land for an Indian reservation was recognized in United States v. McGowan, 302 U.S. 535, 58 S.Ct. 286, 82 L.Ed. 410. If the Federal Government may constitutionally establish Indian reservations by the purchase of lands, it may also, we think, exercise the power of eminent domain in order to acquire them. As this Court said in Barnidge v. United States, 101 F.2d 295, 298: "If the Federal Government, under the Constitution, has power to embark upon the project for which the land is sought, then the use is a public one."

■ It is our conclusion that the guardianship which the United States is required to exercise over the Indians makes the use of lands acquired by it for the purpose of affording them food, occupation, and a place to live, a public use. The prob-

---

[4] See, also Cherokee Nation v. State of Georgia, 5 Pet. 1, 8 L.Ed. 25; United States v. Holliday, 3 Wall. 407, 18 L.Ed. 182; Choctaw Nation v. United States, 119 U.S. 1, 7 S.Ct. 75, 30 L.Ed. 306; Stephens v. Cherokee Nation, 174 U.S. 445, 19 S.Ct. 722, 43 L.Ed. 1041; State of Minnesota v. Hitchcock, 185 U.S. 373, 22 S.Ct. 650, 46 L.Ed. 954; Cherokee Nation v. Hitchcock, 187 U.S. 294, 23 S. Ct. 115, 47 L.Ed. 183; Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299; United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; Matter of Heff, 197 U.S. 488, 25 S.Ct. 506, 49 L.Ed. 848; United States v. Celestine, 215 U.S. 278, 30 S.Ct. 93, 54 L.Ed. 195; United States v. Sutton, 215 U.S. 291, 30 S.Ct. 116, 54 L.Ed. 200; Tiger v. Western Investment Co., 221 U.S. 286, 31 S.Ct. 578, 55 L.Ed. 738; Hallowell v. United States, 221 U.S. 317, 31 S.Ct. 587, 55 L.Ed. 750; United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107; Perrin v. United States, 232 U.S. 478, 34 S.Ct. 387, 58 L.Ed. 691; United States States v. Pelican, 232 U.S. 442, 34 S.Ct. 396, 58 L.Ed. 676; United States v. McGowan, 302 U.S. 535, 58 S.Ct. 286, 82 L.Ed. 410.

lem of providing for the care, protection and welfare of these dependent tribes is a public problem and one which is necessarily national in its scope and character. While it is regrettable that the plan of the United States for the utilization of the area involved in this proceeding has come into conflict with the plan of the State, the State's program "must bow before the 'superior power' of Congress." State of Oklahoma v. Guy F. Atkinson Co., 313 U.S 508, 535, 61 S.Ct. 1050, 1064, 85 L.Ed. 1487.

The judgment appealed from is affirmed.