TIM DONOVAN, Appellant, v. DANIEL DRISCOLL as Executor of Estate of Timothy Donovan, Deceased, Appellees.

Contracts: BETWEEN PARENT AND CHILD FOR SERVICES. Declarations by a father to third persons that an adult son remaining at home and working for the father is not working for nothing, and that he does not want his boys to work for him for nothing, cannot be construed as admissions of a contract to pay the son for such services.

SAME. Statements by a father indicating an intention to pay a son for certain services, without specifying the manner of such payment, are as consistent with payment by making the son a beneficiary in the father's will as in any other manner; and, when a bequest is made to the son, the statements are not sufficient to establish his right to additional compensation for his services.

*Same.* The presumption that the services of an adult son, rendered for the father while residing at the family home, are gratuitous, is not rebutted by evidence of declarations of the father to third persons that the services are valuable, and will be paid for.

*Same.* The fact that an adult son remains at the father's home for eighteen years, and does the buying and selling for the farm, and accounts for the money, without demanding or receiving any compensation, creates a strong presumption that compensation for his services was not intended by the father or son.

EVIDENCE: *Admissibility.* Where a father is not shown to have requested his daughter to write a letter to a son requesting the latter to come home, or to have had any knowledge of the letter, the letter is not admissible in an action by a son against a father's estate for services rendered after his return.

REPEATING OBJECTIONS. Where the court, on objection being made to certain testimony, asks if the objection is on the ground of the incompetency of the witness, and is answered in the affirmative, the sustaining of further objections to similar testimony of an incompetent witness is not erroneous, on the ground that such objections raise the question of the competency of the evidence and not of the witness, though the objections are not as explicit as they should have been.

*Appeal from Franklin District Court.*—HON. J. R. WHITAKER, Judge.

SATURDAY, APRIL 12, 1902.

PROCEEDING for the allowance of a claim against the estate of Timothy Donovan, deceased. Upon trial to a jury, the court directed verdict for defendant. Plaintiff appeals. —*Affirmed.*

*Taylor & Evans* for appellant.

*J. H. Scales* for appellee.

WEAVER, J.—Timothy Donovan, Sr., died testate, leaving to his son Timothy a legacy of $1,000, and the remainder of his estate to other children. The record does not disclose the amount or value of the estate, or whether the legacy to plaintiff was more or less than he would have received upon an equal distribution among the heirs at law. At the date of Mr. Donovan's death the plaintiff was about 38 years of age, and, with the exception of a

few short periods in other service, had at all times made his home with his father. He helped his father in the work of the farm, and to some extent at least exercised active management of the farm work. For the labor thus performed he files a claim for $6,000.

I.  No testimony whatever of any express agreement by the father to pay for these services is shown in the record, nor in our judgment is there any evidence of circumstances from which such agreement could be inferred or implied. Aside from the fact that plaintiff did remain a member of his father's family after arriving at his majority, and continued to perform labor and service on the farm until the father's death, the evidence relied upon by him is as follows: Henry Peters, a witness, says that in 1895 he spoke to the old gentleman about the son's labor, and said, "Tim ought to have good pay for it," to which Mr. Donovan responded that he "did not calculate Tim was working for nothing for him." Michael Driscoll testified to a conversation with the father, in which the latter said to the witness, "Your father ought to give you boys a chance. I would not want boys to work for nothing." Frank McGivney testified that in 1891, when plaintiff was away from home, working for a brother, he heard the testator "say he would like to have Tim back." This constitutes the entire evidence before the jury in support of the proposition that the father ever agreed or expected to pay the plaintiff wages for the service performed by him. In our view the showing is entirely too meager and indefinite to justify a verdict in plaintiff's favor. The language which the witnesses attribute to the father cannot be interpreted as an admission of the existence of any agreement between him and the plaintiff; and, so far as it may be said to bear upon his purpose or intent to make compensation for plaintiff's services, it is equally consistent with the purpose to effect that object by the provision in his will. The doctrine

that the services of a son remaining in the family home after his majority are presumed to be gratuitous, in the absence of an express contract or circumstances indicating a contrary intent on part of both parent and child, is too well established in this state to admit of question. *Scully v. Scully's Ex'r,* 28 Iowa, 548; *Smith v. Johnson,* 45 Iowa, 308; *Cowan v. Musgrave,* 73 Iowa, 384; *Enger v. Lofland,* 100 Iowa, 303. This presumption is not overcome by statements made by the parent to third persons that the son's services are valuable, or that they will be well paid for, or other like indefinite expressions. *Decker v. Kanous' Estate,* — Mich. — (88 N. W. Rep. 398). So far, therefore, as pertains to the evidence before the jury, we think there was no error in directing a verdict for defendant.

II.   The witness McGivney testified that while plaintiff was away from home at work for a brother during a part of the summer of 1891, he (witness), who was then living with the Donovan family, wrote a letter to plaintiff asking him to come back. He wrote the letter at the request of plaintiff's sister, a member of the family. The father did not request it, was not present when it was written, and, so far as shown, had no knowledge whatever of the letter or of its contents. Upon this very unsubstantial foundation the plaintiff offered to show the contents of the writing, the letter itself being lost. This offer was refused, and error is assigned upon such ruling. The mere statement is sufficient demonstration of the incompetency of the testimony. The ruling was clearly right. Complaint is also made that plaintiff was not allowed to testify to his own expectation of receiving compensation for his services. This court has already held such testimony inadmissible. *Cowan v. Musgrave,* 73 Iowa, 384. Counsel impliedly concede that much of the matter ruled out by the trial court, especially in the plaintiff's own testimony, is not ordinarily admissible, but insist that the objection went to its competency, and not to the competency of the witness,

which was the only ground upon which it could be correctly excluded. It is true the objection was not made explicitly as it should have been, but it appears, at the outset, when objection was raised, the presiding judge asked counsel for the defendant if he thereby intended to object to the competency of the witness to testify, and counsel answered in the affirmative. We think, the point having thus been once clearly made, the subsequent objections to the same class of testimony by the same witness, though not restated each time with as much detail as at first, were intended to and did present the same question for the ruling of the court, and there was no error in excluding the answers. Other exceptions taken to rulings upon the admission of evidence do not require discussion. It is sufficient to say that we find no reversible error in any of the matters complained of.

Claims like the one under consideration should not be allowed in the absence of reasonably clear and satisfactory evidence in their support. Speaking upon this subject the supreme court of Michigan has said: "The testimony should be clear and explicit, and should not depend on mere conjecture. * * * This class of claims should not be encouraged by the courts. Indeed, it is the duty of the court to protect estates from them, and to require some substantial proof establishing them before allowing juries to speculate as to the existence of the contract necessary to support them." *Wright v. Senn's Estate,* 85 Mich. 191 (48 N. W. Rep. 545) ; *Decker v. Kanous' Estate, supra.* The doctrine thus announced is a salutary one, and the case at bar affords a proper occasion for its application.

In addition to the entire absence of proof by the plaintiff of an agreement, express or implied, for any compensation beyond his support as a member of the family, the very fact that he continued for 18 years to take a more or less active part in his father's business, and, further, claims to have done the buying and selling for the

farm, and to have accounted to the father for the moneys thus obtained, and yet, during all that long period, never demanded or received salary or wages, affords, in itself, a very strong presumption that none was contemplated by either party. It is quite clear from his own showing that, while the assistance rendered by him was of some value, the services so performed were not those of a hired servant, but rather of that voluntary kind usually rendered by a member of the family. He seems to have been, to a great extent at least, his own master, and, though making his home with his father, went out a few times temporarily to other service; but there is no claim made that at any time he went away without the intention of returning to his place in the family. He says, of the 18 years after he became of age, "I had no other source of income except what pay I might get for the work on my father's place;" and, while he further alleges that he "had nothing out of the farm except board and clothes," the statement is not in harmony with other portions of his testimony. He admits to being somewhat dissipated in his habits, and, though denying the purchase of any great amount of intoxicants, says, "What I did buy, I got the money from the farm." From this and other indications afforded by the record, it may fairly be inferred that he also had from the same source the means of defraying the ordinary expenses of a young man in his station of life.

We cannot enter into any speculations upon the reasons why the father saw fit to give plaintiff a definite legacy of $1,000, instead of an equal share in his estate. It is immaterial. He had the right to dispose of his property as he saw fit, and to make such estimate of the comparative deserts of his children and their comparative claims upon his bounty as he believed to be just and right; and it is not the province of courts to defeat the purposes of his will by allowing, upon meager and unsatisfactory evidence, claims which divert the

bulk of his estate into channels never contemplated by the testator.

Believing there is no prejudicial error in the record, and that the judgment entered by the trial court is right, it is, therefore, AFFIRMED.