In the Matter of the Estate of HATTIE DAY OGDEN, HOWARD C. OGDEN, Claimant and Appellee, v. I. W. KEERL, Administrator, Defendant and Appellant.

**Estates of decedents:** CLAIMS FOR SERVICES: FAMILY RELATION: PRE-
1   SUMPTION. The rendition of services for and at the request of
    another raises the presumption of a promise to pay therefor;
    and this presumption is not overcome by the fact that the serv-
    ice was performed for a step-parent in whose family the child
    never lived.  And in such case the burden is upon the one assert-
    ing that the service was gratuitous to establish that fact.

**Same:** EVIDENCE. In this proceeding to establish a claim for serv-
2   ices rendered decedent, in which the evidence disclosed that
    decedent directed the preparation of a deed to certain property
    conveying the same to claimant, which was never executed, and
    a devise of the same property, subsequently revoked, were not
    intended as compensation alone for services rendered decedent,
    evidence of the value of such property and its acceptibility was
    incompetent and its submission to the jury was prejudicial.

*Appeal from Cerro Gordo District Court.*—HON. C. H.
                    KELLEY, Judge.

SATURDAY, JUNE 10, 1911.

THE claim of Howard G. Ôgden against the estate of Hattie Day Ogden, deceased, was allowed by the district court, and the administrator appeals.—*Reversed.*

*Frank W. Chambers, D. W. Telford,* and *Healy & Healy,* for appellant.

*Blythe, Markley, Rule & Smith* and *Cliggitt, Rule, Keeler & Smith,* for appellee.

LADD, J.—I. The claim is for services rendered. The decedent, Hattie Day Ogden, had married John G. Ogden in 1878 and they lived in Kansas until his death in 1897. The claimant is John D. Ogden's son by a

1. ESTATES OF DECEDENTS: claim for services: family relation: presumption.

former marriage, in the meantime had resided in Mason City, to which place decedent moved in 1902 to reside with a brother, C. H. Day. In the year following, Day died testate, and under deeds and his will the decedent took the greater portion of his estate. Subsequently some of the heirs of Day filed objections to the probate of the will, and a suit to set aside the deeds was begun. Thereafter these controversies were so adjusted that decedent acquired the entire estate amounting to about $110,000 in value less $18,000 paid in effecting the compromise. In bringing this about, as well as in the settlement of the estate and its management until her death in October, 1906, the claimant assisted decedent, and now claims compensation for services so rendered. He had never lived as a member of her family, and though their relationship may account' for many of the amenities evidenced by the record, it was not such as to obviate the rule that from the performance of services at the request of or with the consent of another, a promise to pay the reasonable value of the services rendered is implied. *Marietta v. Marietta,* 90 Iowa, 201; *In re Bishop's Estate,* 130 Iowa, 250; *Rea v. Flathers,*

31 Iowa, 545; *Anderson v. Jacobs,* 112 Iowa, 749. Had
claimant been a member of decedent's family, it must have
appeared affirmatively that the services were rendered with
expectation by the one of receiving and the other of mak-
ing compensation therefor. *Ridler v. Ridler,* 103 Iowa,
471; *McGarvy v. Roods,* 73 Iowa, 363. He was not a
member of her family, however, and was under no legal
obligation to do what he did, and to obviate liability the
burden of proof was on the administrator to show that the
services were intended to be gratuitous. *Hall v. Luckman,*
133 Iowa, 518; *Hudspeth v. Yetzer,* 78 Iowa, 11. The
evidence was abundant that she felt under obligation for
what he had done, and, as will appear later on, so ex-
pressed herself, and that he should be paid therefor. Of
course, if the services, such as they were, were given with-
out thought of exacting compensation therefor, this ought
not to have been allowed. Whether there should have been
a recovery clearly was for the jury to determine.

II. The testimony of several witnesses was to the
effect that decedent had expressed her gratitude for the as-
sistance claimant had furnished herself and his father when
living in Kansas, his kindness to her, and
also had mentioned his services in settling
the estate of her brother and in the management of the
property she had received therefrom, and had said to dif-
ferent persons that she ought to remember him in some
way; that she ought to leave him enough property to repay
him for all his kindnesses; that she intended to give him
something for it—to give him a certain building on Main
Street; that she was going to give him the building Payne
was occupying on account of the kind way he had treated
her and what he had done for her; that she had never
given Howard anything for what he had done for her, but
she expected to; that he had been very kind to her while
her husband was sick and since her brother had died, and
that she calculated to see that he was well paid, to pay him

2. SAME:
evidence.

well, and recompense him for his services; that she ought to remember him in some way, and had concluded to deed him the Payne lot. One witness testified that "she stated she was to pay him by deeding the south building on Main Street of the Day property to him, and that she had made the deed," but on cross-examination, after relating the conversation, said that "the substance of it was that she was going to give him a lot on Main Street, the one Payne was occupying, on account of the kind way he had treated her and what he had done for her." She had an attorney prepare a deed conveying this lot to him, but did not sign it, as she changed her mind and made a will devising the lot to him. This will was subsequently revoked and she died intestate. Claimant was allowed over objection to show the value of this lot, and that it with building was acceptable to him as compensation for his services. If she contemplated conveying the lot or leaving it to him by will, this was in the way of compensation for his services rendered her individually alone, but, as clearly and conclusively appears from the evidence, mention of this was also because of his generous assistance of herself and his father when in need, and his goodness at all times as well. Moreover, there is nothing in the record to indicate the portion she may have estimated as covering his services, and, this being so, it is not perceived on what theory the ruling by which the evidence of the value of the lot and its acceptability to him can be sustained. With reference to this aspect of the case the court instructed the jury that: "If you find, from the weight or preponderance of the evidence introduced upon the trial, that plaintiff performed services for Hattie Day Ogden, which are not shown to have been intended as gratuity and that she afterwards by her acts and conduct showed a purpose and intention to convey to plaintiff property either by deed or will, in payment for such services, then you have a right to regard the fair market value of such property in 1903,

as her estimate of the value of such services, and it is proper for you to consider such acts and conduct on her part, together with all the other evidence in the case, in determining the reasonable value of the plaintiff's services, and the amount, if any, which he is entitled to recover in this action." As neither the deed nor the devise was shown to be in payment of services alone, and the inducement thereto included financial aid long previous which the jury was not to consider as well as the obligations of the affection, it is manifest that proof of the value of the property could have thrown no light whatever on what decedent may have thought the services rendered were worth. Had there been a contract to convey or devise the property in consideration of 'the services rendered, or had she expressed the purpose of so doing, it may be that the valuation placed thereon by her would have been admissible as tending to prove the value of the services, especially in a case like this where these were largely advisory. See *Chandler v. Baker*, 191 Mass. 579 (78 N. E. 387). On that point, however, we express no opinion, for there was no evidence tending to show that the contemplated conveyance or devise was limited to the matter of compensation for services.

In receiving the evidence mentioned and in giving the instruction quoted, the court erred. Several errors assigned are not argued, and others argued are not likely to arise on another trial.—*Reversed.*