## CLARK v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. June 14, 1919.)

### No. 2455.

1. CRIMINAL LAW ⚖⟲1129(2)—APPEAL—ASSIGNMENTS OF ERROR.
   A criminal case record, containing superfluous and overlapping assignments of error, disapproved.
2. RECEIVING STOLEN GOODS ⚖⟲8(3)—SUFFICIENCY OF EVIDENCE—OWNERSHIP BY UNITED STATES.
   In prosecution under Penal Code, § 48 (Comp. St. § 10215), for having possession with intent to convert property stolen from United States, evidence *held* to sustain jury finding that property belonged to United States, despite mistaken references in shipping orders to date of contract under which government secured title.

In Error to the District Court of the United States for the District of New Jersey; Thomas G. Haight, Judge.

James Clark was convicted of having property stolen from United States in his possession with intent to convert the same, and he brings error. Affirmed.

On January 20, 1918, pursuant to an agreement made on the fourth day of the same month, United Metals Selling Company entered into a contract with the United States to make and deliver to it a large quantity of electrolytically refined copper for use in the manufacture of munitions. In obedience to orders made by the Ordnance Department of the Federal Government, the Selling Company directed the Raritan Copper Works, one of its subsidiaries, to deliver to the Erie Railroad Company for shipment to United States Inspector of Ordnance at the New Jersey Tube Company at Harrison, New Jersey, a quantity of the contract copper to be manufactured by the latter concern into munition parts under a contract between it and the United States. The bill of lading for the shipment recited the United States and carrier as parties and was in the form used especially for transporting government property. The copper was dealt with by the Copper Works, the Railroad Company, the government agents and the Tube Company as property of the United States. It was delivered by the Copper Works to the United States under contract, carried toward Harrison by the Railroad Company for the United States, and like consignments, not stolen, were received by the United States Inspector of Ordnance at Harrison as property of the United States and there worked into munition parts by the Tube Company under contract with the United States.

Men who were informed of a proposed shipment of copper from the Copper Works to the Tube Company boarded the train at a point at which it had stopped on the Jersey City "dumps," tossed out copper bars to the value of $4,500.00, hauled them to the premises of Clark and there hid them under circumstances involving his complicity in the transaction.

Wm. A. Kavanaugh, of Hoboken, N. J., for plaintiff in error.
A. J. Steelman, of Jersey City, N. J., for the United States.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and DICKINSON, District Judge.

WOOLLEY, Circuit Judge (after stating the facts as above). James Clark, Mendel Rankin, Louis Hanin, Julius Schlecter and Caesar Frazer were charged by one indictment with having in their possession

⚖⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

goods and merchandise stolen from an interstate shipment (Act Cong. Feb. 13, 1913, c. 50, § 1, 37 Stat. 670 [Comp. St. § 8603]), and by another indictment with having in their possession with intent to convert to their use property of the United States which had theretofore been stolen by another person, knowing the same to have been stolen (Penal Code [Act March 4, 1909, c. 321] § 48, 35 Stat. 1098 [Comp. St. § 10215]). The trial proceeded by consent on both indictments against the first four named defendants. Frazer had not been apprehended. The court directed the jury to acquit Schlecter on both indictments and to acquit the remaining defendants on the first indictment. Under the second indictment, Clark, Rankin and Hanin were convicted. Rankin and Hanin submitted to sentence, and Clark alone sued out this writ of error.

We have presented to us thirty-eight assignments of error, which may be readily compressed into four groups, viz.: Errors (1) in the admission of evidence; (2) in the refusal of the court to charge as prayed; (3) in the instructions charged; and (4) in the court's refusal to direct a verdict of acquittal.

[1] This record with its superfluous and overlapping assignments of error constrains us to repeat the admonition of the Supreme Court in Chesapeake & Delaware Canal Co. v. United States, 250 U. S. 123, 39 Sup. Ct. 407, 63 L. Ed. ——:

"This practice of unlimited assignments is a perversion of the rule, defeating all its purposes, bewildering the counsel on the other side, and leaving the court to gather from a brief, often as prolix as the assignments of error, which of the latter are really relied on." Phillips Construction Co. v. Seymour, 91 U. S. 646, 648 [23 L. Ed. 341]; Grayson v. Lynch, 163 U. S. 468 [16 Sup. Ct. 1064, 41 L. Ed. 230]; and Central Vermont Ry. Co. v. White, 238 U. S. 507 [35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252].

The assignments of error as we have grouped them resolve themselves into three questions: First, whether there were errors in the admission of evidence and in instructions which the court charged and refused to charge the jury; second, whether the evidence sustains the finding of the jury that property in the stolen copper was in the United States as laid by the indictment, and third, whether the evidence sustains the finding of Clark's complicity in the crime.

"Of course, in jury trials, erroneous rulings are presumptively injurious, especially those embodied in instructions to the jury; and they furnish ground for reversal unless it affirmatively appears that they were harmless." Fillippon v. Albion Vein Slate Co., 250 U. S. 76, 39 Sup. Ct. 435, 63 L. Ed. ——.

Applying this rule to the first question, we dispose of it without doing more than to say, that the trial court's rulings on evidence and its charge to the jury, covering instructions made and denied, were in nearly every instance free from error; and in the few instances open to doubt, it affirmatively appears, that if error was present, it was entirely harmless.

[2] We find no substance in the question of proof of property in the United States. This question as raised by the plaintiff-in-error is based on several mistaken references to a date of the contract between the United Metals Selling Company and the United States, con-

tained in shipping orders from the Ordnance Department to the Selling Company, by which the Government proposed to prove property in itself. The references were to a contract between the Selling Company and the Government of January 4, 1918, when the contract obviously referred to bore the date of January 20, 1918. But the misreferences in these orders were instantly cured by correct references in the same orders to the contract by its contract number—G1875–360S. There can be no question that the contract bearing this' number was the contract under which the orders were issued and the shipment was made and that it showed the Government's property in the copper. Aside from this contract as evidence of property, there was other evidence to the effect that the copper, when delivered by the Copper Company to the Railroad Company for transportation, and later when it was stolen in transit, was the property of the United States and had previously been accepted as such by its duly authorized agents. The defendants did not attempt to controvert the Government's testimony on this issue by testimony of their own; they merely challenged its accuracy and sufficiency.

The remaining question—the sufficiency of the evidence of Clark's complicity in the crime—is not open to dispute in view of the positive character of the Government's testimony and the negative character of the testimony produced by Clark. As the testimony for and against Clark was admitted with scrupulous regard to the rules of evidence in the trial of criminal causes, and as the jury have resolved that evidence against Clark, there is nothing for this court to do but direct that the judgment below be

Affirmed.