## PULVER v. UNION INV. CO.

(Circuit Court of Appeals, Eighth Circuit. March 4, 1922.)

No. 5931.

1. Contracts ⬅═353(1)—Charge held not to limit plaintiff to date of contract alleged as claimed in exception.

A charge stating that plaintiff alleged he and defendant made a contract in the spring of 1910, that plaintiff's testimony as to conversation with defendant's representative in April or May and as to subsequent talks were denied by the representative, and which submitted to the jury to determine which testimony was to be believed, was not subject to the exception that plaintiff was thereby confined to the date of the contract alleged, notwithstanding evidence the contract was later made.

**2. Contracts ⊚=353(8)—Charge held not to sustain exception to direction of verdict on failure to find refusal to make additional loans.**

An exception to a portion of the charge to find for defendant if the jury failed to find that defendant refused to loan any further sums was not sustained, where the charge on that question stated that, if the jury failed to find a refusal by defendant to furnish further credit and a demand for repayment in violation of the terms of the alleged contract, the verdict should be for defendant.

**3. Appeal and error ⊚=1068(4)—Charge on damages not prejudicial to plaintiff, where jury found for defendant.**

A charge referring to the measure of damages cannot be error prejudicial to plaintiff, where the verdict was for the defendant.

**4. Trial ⊚=251(4)—Requested charges eliminating defenses not raised by defendant were properly refused.**

In an action for breach of contract to extend credit, where the only defenses relied on were denial of the contract to extend credit and a denial of the alleged refusal of credit, requested charges that the insolvency of the corporation to which credit was to be extended would not justify defendant in breaching its contract to extend the credit to the corporation were properly refused, even though they were correct as abstract propositions of law.

**5. Trial ⊚=260(9)—Requested charge as to cause of insolvency held covered, in so far as correct.**

In an action for breach of a contract to extend credit to a corporation of which plaintiff was a stockholder, a requested charge to find for plaintiff, if the refusal to extend the credit was the proximate cause of the corporation's insolvency, was covered in so far as it was correct by a charge that, if the jury found the contract was made between plaintiff and defendant, that defendant breached the contract, and plaintiff suffered loss which was caused by the breach of the contract, the verdict should be for plaintiff.

**6. Trial ⊚=253(5)—Requested charge directing verdict for plaintiff on finding as to only one issue was error.**

In an action for breach of contract to extend credit to a corporation in which plaintiff was interested, where defendant denied making the contract and denied refusal to extend credit, a requested charge directing a verdict for plaintiff on a finding only that the defendant's refusal to extend credit caused the insolvency of the corporation was clearly erroneous.

**7. Pleading ⊚=236(5)—Refusal of immaterial amendments to complaint held not abuse of discretion.**

It was not abuse of the trial court's discretion to refuse to permit plaintiff during the trial to amend his complaint to conform to the proof, where the testimony excluded was not pleaded, was immaterial, and the amendment would not make it material.

**8. Appeal and error ⊚=959(3)—Pleading ⊚=236(5)—Allowance of trial amendment is discretionary.**

The allowance of trial amendments to make the pleadings conform to the proof are clearly within the discretion of the trial judge, and his ruling thereon will be reversed on appeal only in case of an abuse of that discretion.

**9. Evidence ⊚=205(1)—Admission must be certain and definite.**

An admission must be certain, consistent, and definite, couched in language reasonably capable of the interpretation sought to be placed on it, and conjectural and supposititious statements are excluded.

**10. Evidence ⊚=261—Whether circumstances made silence an admission is question for the court.**

Whether the circumstances were such as to call for a reply by a party to remark made to him, so as to make his silence an admission is a question for the court.

⊚=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**11. Evidence ⬱220(2)—Failure to reply to telephone statement charging breach of contract held not admission thereof.**

Where plaintiff, who claimed that defendant had breached its agreement to extend credit to a corporation in which both were interested, stated, in reply to defendant's inquiry as to why a receiver had been appointed, that it was because defendant did not live up to his contract, the statement required no reply, and it was not error to exclude the statement from evidence.

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Action by J. E. Pulver against the Union Investment Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Harrison E. Fryberger, of Minneapolis, Minn., for plaintiff in error.
Robert Driscoll, of Minneapolis, Minn. (William A. Lancaster, David F. Simpson, John Junell, James E. Dorsey, and Harold G. Simpson, all of Minneapolis, Minn., on the brief), for defendant in error.

Before CARLAND and STONE, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. The plaintiff in error sued the defendant in error for $36,500 and interest for breach of contract. Upon a trial to a jury, a verdict for the defendant was returned, upon which judgment was entered, and to reverse this judgment this writ of error is prosecuted. The assignments of error cover 12 pages of printed record; some of them were repetitions, and others without any exceptions allowed at the trial.

We feel justified to call attention to what has been said by the Supreme Court in a number of opinions on this practice. The latest opinion is Chesapeake & Delaware Canal Co. v. United States, 250 U. S. 123, 124, 39 Sup. Ct. 407, 63 L. Ed. 889. The court said, quoting from former opinions:

"This practice of unlimited assignments is a perversion of the rule, defeating all its purposes, bewildering the counsel of the other side, and leaving the court to gather from a brief, often as prolix as the assignments of error, which of the latter are really relied on."

The complaint charges that the Segerstrom Piano Manufacturing Company, hereafter referred to as the Piano Company, was a Minnesota corporation, and until May, 1913, a going concern, manufacturing pianos and selling them at wholesale and retail; that its business was growing steadily during the years 1910, 1911, and 1912, and it became one of the largest and best-known institutions of its kind in the country, all of which was known to defendant; that in 1909 plaintiff had become a stockholder in the company by the purchase of $1,000 of its stock; that in 1910 the defendant proposed and agreed that, if plaintiff would become actively identified with the Piano Company, and indorse certain notes of the Piano Company for the benefit of defendant, it would finance the Piano Company by extending a line of credit of at least $150,000 and would permanently extend it to at least $200,000, as long as plaintiff should be identified with said company and

remain an indorser on its negotiable paper for loans made by defendant, charging for its loans 10 per cent. per annum; that as a part of the said agreement defendant stated that it had already engaged to become a quasi partner in the business of the Piano Company, its share of the profits of the business to be the 10 per cent. interest charged on its loans; that these statements were made by defendant to plaintiff for the purpose of inducing plaintiff to become identified with the Piano Company and indorse its negotiable paper to defendant and to make further investments in the stock of the Piano Company; that plaintiff believed these statements of defendant, and in reliance thereon accepted defendant's proposals in the early part of 1910; that defendant occupied a confidential fiduciary relation toward the plaintiff, and could not take any unfair advantage of him in these dealings; that in reliance upon the statements and agreements plaintiff in the years 1910 and 1911 purchased stock in the Piano Company in the sum of $27,000, continued as vice president, and during all these years indorsed notes of the Piano Company for a great many thousands of dollars, which were purchased by defendant; that in reliance on said agreements he also indorsed other notes, for loans made by others, for the sum of $20,000, loaned the Piano Company of his own money $1,561.88, and purchased its notes of the value of $2,446.80.

It is then alleged that these representations of defendant were untrue, as it never intended to carry them out; that in 1910 defendant did extend to the Piano Company a credit of $102,000, and continued it until 1913, when it refused to extend any further credit, although it knew that the Piano Company and plaintiff relied on defendant furnishing such sums of money to pay its debts and to finance it; that defendant had advised and urged the Piano Company to extend its business and incur large indebtedness, with the assurance of financing it, and would furnish $200,000, and in 1913 refused to do so; that by reason of this wrongful refusal of defendant to advance these sums of money the Piano Company was placed in the hands of a receiver, and all its property sold at forced sale, so that there was not sufficient realized to pay the debts of the Piano Company; that by reason thereof plaintiff's stock of $20,000 had become worthless, that as to his loans of $32,500 he has been damaged in the sum of $14,000, and the loss of $2,446.80 notes purchased by him.

The answer of defendant denies every allegation in the complaint.

Turning to the record, we find that there were only four exceptions taken by the plaintiff to the charge of the court, in addition to exceptions taken to the refusal of the court to give six special instructions asked on behalf of the plaintiff, and exceptions to the admission of certain evidence and sustaining objections to certain evidence offered by plaintiff. The exceptions to the charge are:

"Mr. Fryberger: The plaintiff also excepts to that portion of the charge that the plaintiff is confined to the date of the contract alleged that the evidence shows that the contract was made in July or August, and that the plaintiff should not be confined to the date of April or May.

"Exception allowed.

"Mr. Fryberger: The plaintiff also excepts to that portion of the charge to the effect that, if you fail to find by a fair preponderance of the testimony

that the defendant refused to loan any further sums, your verdict will be for the defendant.

"Exception allowed.

"Mr. Fryberger: The plaintiff also excepts to that portion of the charge that the only purchases of stock you will consider is the 15 shares and the 40 shares purchased by plaintiff.

"Exception allowed.

"Mr. Fryberger: And also excepts to the failure of the court to charge that, if the breach of the contract by defendant was the proximate cause of the insolvency of the Segerstrom Company, the mere fact that there was another contributing cause, or concurring cause, would not prevent a recovery by plaintiff.

"Exception allowed."

[1] As to the first exception, there is nothing in the charge to justify this exception. What the court said was that—

"Plaintiff alleges in his complaint that in the spring of 1910 he and the defendant made this alleged contract."

And in referring to the evidence the court said:

"There has been introduced testimony on the part of the plaintiff as to certain conversations had between him and Dr. Wellcome, representing the Union Investment Company, and Mr. Segerstrom, along in April or May, 1910, at the Minneapolis club," and "as to subsequent talks with Dr. Wellcome, along the same line. On the other hand, the testimony of Dr. Wellcome has been given * * * that there was no such talk at the time and place, * * * and that there was no such contract ever made"

—and then left it to the jury to determine which of the testimony is to be believed. Nowhere did the court in its charge confine the plaintiff to any particular date as to the making of the contract to April or May, 1910.

[2] As to the second exception, there is nothing in the charge to sustain it. The court, after reviewing the evidence of both parties on that question, left it to the jury to determine the facts. The court said:

"Now, gentlemen, it is your duty to consider the evidence, and the whole of it, bearing upon this question of the alleged breach of the contract. If upon such consideration you fail to find from the evidence, by a fair preponderance thereof, that there was a refusal by the defendant to furnish further credit, and a demand for repayment all in violation of the terms of the alleged contract—I say, if you fail to find this, then you need not consider any further question in the case, but in that event your verdict would be for the defendant. But if upon such consideration you should find by a fair preponderance of the evidence that the defendant in the spring of 1913 did refuse to loan to the Segerstrom Company further money, and did demand that it repay what it had already borrowed, all in violation of the alleged terms of the alleged contract, and that the Segerstrom Company stood ready at that time to borrow in accordance with the terms of the alleged contract, and that it did request further credit at that time, then you will take up for consideration the next question in the case, and that is: Did the plaintiff suffer damages by reason of the breach of the contract on the part of the defendant?"

[3] The third exception to the charge refers to the measure of damages; but, as the verdict was for the defendant, it could in no event be prejudicial error.

The fourth exception is the failure to charge that—

" If the breach of the contract by defendant was the proximate cause of the insolvency of the Segerstrom Company, the mere fact that there was another

contributory cause, or concurring cause, would not prevent a recovery by plaintiff."

To cover this omission plaintiff asked a special request, No. 11, which will be considered later in this opinion, in connection with this exception.

[4] The first, second, and third special requests of plaintiff, which were refused and excepted to, were to the effect that: First, the weak financial condition of the Piano Company; second, the insolvency of the company; and the third, the failure of the company to put up collateral security for the loans—or either of them, would not justify the defendant breaching its contract, so far as the plaintiff was concerned.

There were no such issues in the pleadings, nor did the defendant rely on such defenses. The defendant relied wholly on the denials that such contracts were ever made, and, if made, they were not breached. These special requests were undoubtedly prepared before the conclusion of the trial, and as there was evidence, brought out collaterally, that the Piano Company had become insolvent, had been placed, on its own petition, in the hands of a receiver, counsel anticipated that defendant might rely on these defenses. But it never did, and no such issues were submitted to the jury. The requests refused, as well as the twelfth and fourteenth, were perhaps well enough as abstract propositions of law (as to this we express no opinion), but they had no place in this case. The learned trial judge appropriately confined the attention of the jury to a consideration of the issues involved, and none other. Declarations of law, when not pertinent and necessary to the case as made, tend rather to confuse than aid the jury. By reducing the issues of fact to as limited a compass as is consistent with the issues involved, the most intelligent and correct verdicts are likely to be secured.

[5] The eleventh request was:

"The decisive question on this branch of the case as to defendant's liability is this: Was the alleged breach of the alleged contract by defendant the proximate cause of the insolvency of the Segerstrom Company? Was the failure of the defendant to furnish money to the Segerstrom Company to the extent of from $150,000 to $200,000 the proximate cause of the insolvency of the Segerstrom Company? If you find that such is the fact, I instruct you that defendant would be liable, even though there might have been some other cause concurring, and which also might have contributed to the insolvency of the Segerstrom Company."

The court in its charge, although not using the words "proximate cause," in effect covered fully this request, in so far as it was correct. It charged:

"If, however, you find from the evidence, upon a full and fair consideration of it, and by a fair preponderance thereof, first, that the alleged contract was made between the plaintiff and defendant; second, that the defendant committed the breach of contract as claimed by the plaintiff; third, that plaintiff suffered loss by reason of the diminution in value of the 55 shares of stock owned by him; fourth, that such loss or damage suffered by plaintiff was due to and caused by the breach of contract by the defendant company—then your verdict should be for the plaintiff in the case. Now, if you find the verdict for the plaintiff, you should find it in such amount as the evidence shows there was a diminution in the value of the 55 shares of stock owned by the plaintiff."

[6] The request as submitted to the court is clearly erroneous, for it directs a verdict for the plaintiff, if the jury finds this single fact in his favor, regardless of the fact that the jury may find that there was no contract, or, if there was, that there was no breach of it, as claimed by defendant. The court properly submitted the issues to the jury.

[7, 8] It is assigned as error that the court refused to permit the plaintiff during the trial to amend his complaint, to conform to the proof, as alleged. This was asked, when the court sustained an objection of defendant to the question asked the plaintiff, whether, subsequent to the interview with Dr. Wellcome in July and August, he loaned money to the Segerstrom Company? The exception was sustained as being immaterial and not pleaded as a part of the contract. Such amendments are clearly within the discretion of the trial judge, and only in case of an abuse of that discretion will an appellate court be justified to reverse his ruling. In this case the court evidently, and we think properly, held that the question was immaterial, and an amendment would not make it material. Nor was it error to refuse an amendment to charge that defendant was a quasi partner of the Piano Company. The complaint charged defendant as a quasi partner, and why it should be necessary to again charge it by an amendment has not been explained by the learned counsel in his elaborate brief or oral argument.

[9] It is next insisted that the court erred in striking out the testimony of plaintiff as to a conversation he had with Dr. Wellcome by 'phone, in which Dr. Wellcome asked him why a receiver had been appointed, and his reply was, "Because you did not live up to your contract." It is claimed that, as Dr. Wellcome did not deny the charge, it was an admission by him that "he did not live up to his contract." It is hardly necessary to say that this cannot be considered as an admission of a breach of a contract. An admission must be certain, consistent, and definite. Ayers v. Metcalf, 39 Ill. 307. It must be couched in language reasonably capable, without forced or strained construction, to bear the interpretation sought to be placed on it. Conjectural and supposititious statements are excluded. Donovan v. Driscoll, 116 Iowa, 339, 90 N. W. 60; Mack v. Cole's Estate, 130 Mich. 84, 89 N. W. 564.

[10] Whether the circumstances are such as to call for a reply is a question for the court. Pierce's Adm'r v. Pierce, 66 Vt. 369, 29 Atl. 364; People v. Mallon, 103 Cal. 513, 37 Pac. 512.

[11] This statement of plaintiff was evidently made as an excuse for the application for a receiver, without having consulted or informed defendant, the largest creditor of the Piano Company, and financially, vitally interested in the concern. In our opinion it required no reply, as it would merely have resulted in a controversy over the 'phone, without any satisfactory result. The court committed no error in its ruling.

Other assignments of error have been examined, but they are so devoid of merit that it would unnecessarily extend this opinion to pass on them, and serve no useful purpose.

The finding of the jury is conclusive, either that there was no contract between the parties, or, if there was, that the defendant did not

breach it. There was substantial evidence to warrant either of these findings, and the court submitted them under correct and fair instructions.

We find no error in the voluminous record. The judgment is accordingly affirmed.