In Re Estate of W. F. Philbrick.

Rosetta Wagner, Appellee, v. J. E. Hambright, Executor, Appellant.

**EXECUTORS AND ADMINISTRATORS: Services Rendered to Dece-**
**1** dent—Persons in Family Relation. The presumption that services rendered by a member of decedent's family were rendered gratuitously must be negatived by claimant.

**WORK AND LABOR: Services by Person in Family Relation.** In the
**2** absence of a contract to pay for services rendered between persons in family relation, it is presumed that such services were gratuitous. Especially is this true when the claimant was, during much of the time for which compensation is claimed, of tender years, and required, and apparently was given, a comfortable home with testator's family.

**CONTRACTS: Requisites and Validity—Nature and Essentials.** Evi-
**3** dence reviewed, and *held* insufficient to establish either an express or an implied contract.

**NEW TRIAL: Excessive Verdict—Verdict Contrary to Evidence.** Ver-
**4** dict for $4,850, for family services rendered while claimant was between the ages of 6½ and 22 years, held grossly excessive.

*Appeal from Dallas District Court.*—H. S. Dugan, Judge.

February 5, 1924.

Proceedings for the establishment of a claim in probate. Trial to a jury. Verdict and judgment for plaintiff, and defendant executor appeals.—*Reversed.*

*William H. Winegar* and *Harry Wifvat,* for appellant.

*George J. Dugan* and *E. W. Dingwell,* for appellee.

Stevens, J.—W. F. Philbrick died testate and without issue at Perry, Iowa, December 28, 1920. His will was admitted to probate March 29, 1921. On October 21, 1921, appellee

1. EXECUTORS AND ADMINISTRATORS: services rendered to decedent: persons in family relation. filed a claim against his estate for services alleged to have been rendered to testator during the period between January 1, 1877, and February 24, 1892. The allowance of the claim was resisted by the executor upon the grounds that it was barred by the statute of limitations, and that, during the time the services are claimed to have been rendered, appellee was a member of the testator's family, and that they were rendered without any expectation of compensation on the part of either. Testator's father died about 15 years after appellee became a member of the family, and his mother about 1912. Appellee entered the home of testator's father and mother about 1873 or 1874, when she was three years of age.

The family at that time consisted of the deceased, who never married, his father, mother, and appellee. They resided on a farm in Dallas County near Dallas Center. A few years later, the farm was conveyed to the testator, who sold the same and purchased another farm of 140 acres near Perry with the proceeds, to which the family then moved. When appellee was about 18 years of age, the family, which then consisted of testator, his mother, and appellee, moved to Perry, where they resided until 1892, when appellee was married. Her husband died in 1898. She then returned to the family home, where she resided until her marriage to Wagner. The following 13 years were lived upon testator's farm in North Dakota. When she left the farm in North Dakota, appellee returned to Perry, where she has since resided. During the years of her absence, testator and his mother lived together in Perry until her death, which occurred about 1912. The father of testator was afflicted with a form of epilepsy, was unable to perform hard labor, and required some care. He died shortly before the family moved to Perry. The mother, although not robust, was able to assist in caring for the household.

The services for which appellee claims compensation were rendered by her between the ages of 7 and 22 years. She was permitted, without appropriate objection, to testify to the rendition of services upon the farm, such as milking, husking corn, putting up hay, feeding calves and hogs, and performing other general farm labor. Other witnesses corroborated her testimony

as to these services. The executor introduced no evidence on his own behalf.

Proof of a contract between appellee and testator is made to rest entirely upon her testimony and that of other members of her family and of one or two disinterested witnesses as to

2. WORK AND LABOR: services by person in family relation. certain alleged statements and declarations made at various times by the deceased. In none of these alleged declarations does testator appear to have referred even remotely to an express agreement or understanding that compensation was to be made for the services rendered by appellee. As all of the services were, in fact, rendered while appellee was a member of the family, the presumption that they were rendered gratuitously must be negatived by her. *Scully v. Scully's Executor,* 28 Iowa 548; *Donovan v. Driscoll,* 116 Iowa 339; *Hankins v. Young,* 174 Iowa 383; *Snyder v. Nixon,* 188 Iowa 779. The evidence, outside of the proof of the services, relied upon to negative this presumption and to prove that they were rendered and accepted with the expectation upon the part of both testator and appellee that compensation was to be made therefor is as follows:

Appellee testified that, on several different occasions, she overheard testator say to his father or mother that: "If I would stay with him and do well by him in working, that he would pay me well when he was done with this."

Alvin Hillman, appellee's son-in-law, testified that, upon an occasion when they were repairing the fences on the North Dakota farm, the testator said that he wanted the fence "put up good, because he intended to leave her the farm for what she [Mrs. Wagner] had done for him when he was done with it,—that was the main part of it. He mentioned that she had worked for him, or helped him out,—that is all he said."

Grace Long, a married daughter of appellee's, testified that she heard testator say that he "would provide for mother for what she had done for him, when he was done with his property. I heard him say that he intended to do what he could for mother when he was done with his property, for what she had done for him,—the work she had done on his farm. Heard him make those statements on different occasions."

Frances Wagner testified that she heard testator say in

Perry that "when he was gone, he wanted to provide for mother; that she would have enough, she would not have to work so hard as she had. He said she had worked for him when she was younger, and had helped him."

Except the incident last mentioned, and the declarations referred to in the testimony of appellee, all of the above statements are claimed to have been made by testator while appellee resided upon his farm in North Dakota, when he visited her.

Mrs. Fred Kennison, a resident of Perry, testified that, in a conversation with the testator shortly before his death, he said, in answer to a question from her:

"Well, Mrs. Kennison, Etta won't have to work so hard after I am through with what I have, because I have left it so she won't need to work so hard."

During his last illness, and while in the hospital, testator had a conversation with his physician, in which, it is claimed, he said in substance that "there was one person that he had not treated right, and that he wished—that he expected to change his will and fix that up. That, upon another occasion, he said that he wished to change his will, that it did not satisfy him as it was, that he wanted to—he wanted to—I didn't understand what he wanted, I did not know until after the time that he told me that was the lady [meaning appellee] that he had not treated right." The witness further testified that he heard testator say to appellee:

"I have not treated you right. I want you to get what you can."

What is there, if anything, in these statements and declarations by the deceased from which the implication of an express promise to pay appellee for her alleged services may be drawn? In none of them did the testator admit, or even remotely refer to, a contract. In all of these various conversations he referred to the time when he would be done with his property. There is no direct evidence in the record of an express contract. Appellee took no part in any of the conversations which she overheard between the testator and his father or mother, and his remarks were, therefore, manifestly not directed to her. There is no evidence, except such as might be implied from knowledge of the declared purpose of the testator to reward her, out of his

property when he was through with it, that the services were rendered in expectation that compensation would be made therefor. Appellee does not fix any time when she overheard the conversations to which she testified. They may have occurred when she was a mere child, when she was incapable of rendering valuable services to the deceased or of recalling vividly what was actually said. The declarations and statements of the testator relate rather to an intention to leave appellee something out of his estate, in recognition of her services in the family, rather than to a promise to pay her therefor, or to an admission of an existing arrangement between them. Appellee was incapable of contracting at any time while the family lived upon the farm. What he said to Hillman amounted to no more than a declaration that he intended to leave the North Dakota farm to appellee. What he said to the other witnesses, except his physician, was that he wanted to provide for appellee so that she would not have to work, when he was gone, as hard as she had when she was young and helped him. What he said to the physician was a lament for his failure to make more satisfactory provision in his will for appellee. Unusual significance must be given in this case to the evidence that appellee became a member of the Philbrick family when but three years of age, and that practically all of the services rendered by her, as to which competent evidence was introduced, were rendered during her minority. The record does not disclose whether she is related to the testator in any of the degrees of consanguinity. We assume that she was not. Much of the time for which compensation is claimed, appellee was of tender years, and required, and apparently was given, a comfortable home with the testator's family. Many cases cited by appellee, such as *Bennett v. Lutz,* 119 Iowa 215, *McGarvy v. Roods,* 73 Iowa 363, *Ogden v. Keerl,* 152 Iowa 106, *In re Estate of Pauly,* 174 Iowa 122, *Feltes v. Tobin,* 187 Iowa 11, and *Snyder v. Nixon,* supra, disclose facts and circumstances which clearly distinguish them from the case at bar. Appellee did not leave her home or abandon her business or do any unusual thing, to enter the employ of or to perform services for the testator. No implication whatever can arise in this case from the mere performance of labor in the house or about the farm. Such labor as she performed was really quite common in the seventies

and the early eighties in the portion of Iowa in which she resided. This, of course, is of no probative force.

The case comes within the class before the court in *Donovan v. Driscoll,* supra. Mere expressions, such as are imputed to the testator, that he intended to leave appellee, who had rendered him some services, a farm, or to provide for her comfort when he was through with his property, fall far short of admissions that an express obligation had been assumed by him to pay for such services. There are no facts in the record out of which an implied contract could arise, nor is there sufficient evidence to justify an inference that an express agreement existed between appellee and the testator. The testimony is not of a high character. The repetition of conversations had long ago is subject to many frailties; memory is possessed of many imperfections; and the understanding is far from infallible.

3. CONTRACTS: requisites and validity: nature and essentials.

Furthermore, the testator, after making several bequests to relatives of from $500 to $1,000 each, gave appellee $100, and another woman, referred to as his housekeeper, $500. His specific bequests amounted to several thousand dollars. In the residuary clause of his will, he gave the remainder of his estate, except $25, to be used by the officers in charge of Violet Hill Cemetery for the upkeep of his grave, to the relatives named as beneficiaries in preceding clauses of his will, share and share alike. Whether he deemed the gift of $100 a sufficient reward to appellee for her services to him or not, the fact remains that this is all he left her in a carefully prepared and executed will. The presumption that appellee's services were rendered gratuitously, as a member of the testator's family, is not negatived by the evidence, and there is nothing of a substantial nature tending to prove that they were rendered by her, or accepted by the deceased, in contemplation of compensation. They were members of the same family, and performed reciprocal services for each other. The result reached upon the merits makes it unnecessary at this time to consider the statute of limitations.

In view, however, of the possibility of a retrial, we deem it proper to suggest that the verdict, which was for $4,850, was grossly excessive. The 15 years for which compensation is de-

4. NEW TRIAL: excessive verdict: verdict contrary to evidence.

manded, covers a period commencing when appellee was but 6½ years of age and ending with her marriage, when she was still under 22. She was incapable of rendering particularly valuable services before she was 12 years of age, notwithstanding the fact that she did not go to school. The only evidence of the services rendered while the family resided in Perry is that given by herself, over the objection of counsel that the testimony was incompetent, under Section 4604 of the Code. Later, the competency of the witness was challenged, and she was not permitted to go into very much detail as to what she did. Mrs. Peters, who was a neighbor while the family resided on the farm near Perry, testified that testator's mother "usually did the main work in the house." The evidence shows that farm hands during the years covered by the evidence were paid about $20 per month, and were given their board. Surely, appellee was not able, when she was 12 years of age, or perhaps at any other time, to do the full work of a farm hand.

For the reasons pointed out, the judgment of the court below is—*Reversed.*

ARTHUR, C. J., DE GRAFF and VERMILION, JJ., concur.