## LAWSON v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit. February 29, 1924.)

Nos. 6304–6307.

1. **Appeal and error** ⊚⇒722(1)—**Practice of filing unnecessary number of assignments of error condemned.**

The filing of an unlimited number of assignments of error defeats the purpose of the rule requiring such assignments, which is to advise the court and opposing counsel of the points intended to be raised, and is not proper practice.

2. **Appeal and error** ⊚⇒731(1)—**General assignments of error will not be considered.**

Assignments of error that the verdict is contrary to the law and contrary to the evidence are too general to be considered.

3. **Injunction** ⊚⇒230(3)—**Evidence held to 'sustain conviction of peace officer for disobeying restraining order.**

In contempt proceedings for violating a restraining order to protect employees during labor trouble, evidence *held* sufficient to warrant a jury in finding that a chief of police, not only aided and abetted an assault in his presence by standing by and failing to protect the persons assaulted, but that he actually encouraged the assault.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Proceedings for contempt against M. F. Lawson, Ernest Barnwell, John Adams, and James Kimes, for violation of injunction. Judgment of conviction based on the verdict of a jury, and respondents bring error. Affirmed.

G. L. Grant, of Ft. Smith, Ark., for plaintiffs in error.

S. S. Langley, U. S. Atty., of Ft. Smith, Ark.

Before KENYON, Circuit Judge, and MUNGER, District Judge.

KENYON, Circuit Judge. The plaintiffs in error, hereafter referred to as the respondents, were cited to appear and show cause why they should not be held for contempt of court for the violation of a temporary restraining order granted by the court in an equity case pending therein, in which the Missouri Pacific Railroad Company is plaintiff and the International Association of Machinists, other labor organizations, and a large number of their members are defendants.

Two informations were filed, one relating to respondent M. F. Lawson, and the other to respondents Ernest Barnwell, John Adams, and James Kimes. The informations were accompanied by affidavits of the persons assaulted and a copy of the restraining order, and charge an assault on S. J. Casper and W. E. Wooten, employees of the railroad company, they having accepted employment from said company in place of former employees, who had gone out on a strike. The responses to the rules to show cause were in the nature of general denials.

The cases as to all the respondents were consolidated, and on their demand the trial was to a jury. The jury returned a verdict of guilty as to each, and the four respondents were sentenced by the court to pay

each a fine of $150, and to be imprisoned in the county jail at Ft. Smith for a period of three months each. Writs of error seek to reverse these judgments.

[1] On account of the condition of this record as to assignments of error, we deem it not inappropriate to again call attention to the impropriety of burdening the record with a multiplicity of assignments of error. This court has condemned such practice in Pulver v. Union Investment Co., 279 Fed. 699. The Supreme Court of the United States and various United States Circuit Courts of Appeals have likewise entered their condemnation of the practice. In Phillips, etc., Const. Co. v. Seymour et al., 91 U. S. 646, 648 (23 L. Ed. 341), the court said:

"The object of the rule requiring an assignment of errors is to enable the court and opposing counsel to see on what points the plaintiff's counsel intend to ask a reversal of the judgment, and to limit the discussion to those points. This practice of unlimited assignments is a perversion of the rule, defeating all its purposes, bewildering the counsel of the other side, and leaving the court to gather from a brief, often as prolix as the assignments of error, which of the latter are really relied on. We can only try to respond to such points made by counsel as seem to be material to the judgment which we must render."

To the same effect is the language of the Supreme Court in Chesapeake & Delaware Canal Co. v. United States, 250 U. S. 123, 39 Sup. Ct. 407, 63 L. Ed. 889. See, also, Central Vermont Railway Co. v. White, 238 U. S. 507, 509, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; Fitter v. United States, 258 Fed. 567, 169 C. C. A. 507; Clark v. United States, 258 Fed. 437, 169 C. C. A. 453.

[2] The record here presents 16 assignments of error. The first 6 and the sixteenth are that the verdict is contrary to the law and contrary to the evidence. These assignments are so general that they cannot be considered by an appellate court. This has been so many times decided that it would be superfluous to cite authorities.

The eighth and fifteenth assignments of error relate to the alleged error of the court in refusing to direct a verdict of not guilty, as requested.

The seventh assignment of error relates to an alleged error of the court in permitting the witness Casper to testify as to a remark made by some member of the mob. Evidently this is regarded as so untenable that counsel in their brief do not discuss it.

Assignments, 9, 10, 11, 12, 13, and 14 relate to the refusal of the court to give certain requests of defendants, which were, however, fully covered by the court's charge.

Assignments 8 and 15 raise the only question, therefore, that is in the record for our consideration, namely: Was the evidence sufficient to sustain the action of the District Court in refusing to direct a verdict of not guilty?

There can be no serious question as to respondents Lawson, Adams, and Kimes. The evidence is amply sufficient to sustain a finding of guilt by the jury.

As to Barnwell there is some difference in the status. The information and motion for rule to show cause against Barnwell, Adams, and Kimes recited that they "did willfully and knowingly assault S. J. Cas-

per and W. E. Wooten, employees of the Missouri Pacific Railroad Company, for the purpose of intimidating and putting in fear the employees of the said Missouri Pacific Railroad Company." Barnwell is therefore before the court on an information charging that he participated in the assault upon Casper and Wooten, employees of the railroad Company. If as a peace officer he not only neglected to protect Casper and Wooten, but actually aided and encouraged the mob in its assaults, his offense is the greater.

The theories of the respondent and the government as to this are naturally in direct conflict. The respondent's claim is that he was chief of police at Van Buren on the day in question, and received information that two armed men were on the street; that he proceeded to where they were, and inquired of them as to whether or not they were armed; that during the conversation some one came up and assaulted these two men, pushing the chief of police away, and that, before he could recover, one of the parties assaulted was thrown down on the street; that he did what he could to protect the two men. On the other hand, it was the theory of the government that he accused the two men assaulted of carrying arms for the very purpose of giving the mob an opportunity to assault them; that he stood by and permitted them to be assaulted and beaten; and that he not only aided, abetted, and encouraged the commission of the assault by refusing to perform his sworn duty, but that he actually engaged in the assault with the mob. That there was a mob, and that the two employees of the railroad company were assaulted, is without question.

The court in his instructions called the attention of the jury particularly to the case as to Barnwell and set forth the theories of the respective sides. He instructed the jury that it was within the power of Barnwell as a police officer to make inquiry of these men as to whether they were armed, and that, if he believed in good faith that either one of them was armed, he could make the arrest; but that before they could convict Barnwell, the chief of police, they must believe from the testimony beyond a reasonable doubt that he made the arrest and failed to give the protection that he could have given by reason of a conspiracy between him, or an understanding between him and others, that the assault should be made upon these men, and specifically said:

"You are instructed that under the law the chief of police, Mr. Barnwell, had a legal right to arrest any person having concealed weapons, and if he received information that Casper and Wooten were carrying concealed weapons he had a legal right to approach them and inquire of them if they were armed, and if he did so, and was acting in his official capacity, he would not be guilty of violating the injunction of this court, if that were done in good faith, and not for the purpose of aiding in an assault upon them because they were employees of the Missouri Pacific Railroad Company."

[3] The jury, in finding Barnwell guilty, evidently must have concluded that he was aiding and abetting the mob in its attack upon these two men. Was the evidence sufficient to warrant such finding? This requires an examination thereof. The witness W E. Wooten testified concerning the assaults made specifically as follows:

"Q. What became of the chief of police during the trouble? A. The chief of police was right among the crowd. He stood there while we were

being searched, and while we were being assaulted, and took no part in trying to stop the assault that I could see."

Referring again to the crowd that made the assault, on page 46 of the record appears the following:

"Q. Among the men sitting before you now, can you identify any of these men as being in that crowd? A. Yes, sir.

"Q. All right, just point them out. A. Mr. Barnwell there was one of them, the chief of police. * * *

"Q. But you are positive as to Barnwell, Adams, and Hoag? A. Yes, sir."

Testimony of witness S. J. Casper, one of the parties assaulted, after describing the riot and the assault, and the turning over of the witness by the chief of police to two men to take care of him:

"Q. You may proceed, Mr. Casper, and state what occurred after those two men—you say the chief of police was present? A. Yes, sir; he was present.

"Q. Those two men that took hold of you; did they take hold of you under the directions of the chief of police? A. I believe so.

"Q. What was done after that? Were you struck? A. I (————) assaulted.

"Q. Assaulted by whom? A. By one of the parties that I recognized a man in my statement.

"Q. What did he say to you? A. Just the words that I have said a few minutes ago. 'You dirty son of a bitch; you had the nerve to come to our town, did you.'

"Q. Can you identify among the defendants the man who used that language to you? A. I believe so. This man right here [M. F. Lawson].

"Q. Can you identify any other defendants that were there? A. Yes, sir.

"Q. Point them out. A. H. W. Roberts. This man was present [indicating G. W. Shirley]. Mr. Barnwell was also present."

The witness also, on page 53 of the Transcript, seems to identify Barnwell as one of the men taking part in assaulting him after he had been turned over to the two men for protection. He says (page 53, Transcript): "Those men I have recognized took part in swinging their fists at me." Barnwell was one of the men he identified. Again this witness (page 54, Transcript):

"Q. While you were being assaulted, as you have testified, you stated a moment ago that the chief of police came to you while you were being assaulted, threateningly A. Yes, sir.

"Q. What did he say, if anything? A. Couldn't just exactly make out the words. He said, 'That is enough, boys,' or 'That will do,' or something to that effect."

In the affidavit of witness Casper, concerning which he was asked by counsel for respondent and which was in evidence, he said:

"In addition to the names given in a former affidavit, the following named parties were present and took part in assaulting me: Ernest Barnwell, John Adams, Jas. Kimes, and J. M. Riddle."

The witness further testified (Transcript, page 59):

"Q. I asked you to point out the men. A. I have pointed out the men to you and you have got the names of them.

"Q. The only ones you pointed out were Lawson, Roberts, Shirley, Barnwell, and Leroy Cole. A. Yes, sir.

"Q. Do you know that those were the men that assaulted you? A. There is two of those men that you have the names that has not assaulted me; no, sir. Two men escorted me, one which I fail to recognize, and the other man made a rush at me, and passed that vulgar remark."

The two men referred to, as disclosed by other evidence, were evidently Mr. Byrnes and Mr. Shirley. So here the witness testifies that Barnwell was one of those assaulting him. Again (Transcript, pages 62, 63), testimony of C. E. Jones:

"Q. I wish, Mr. Jones, from these men that are on trial here, you would point out the ones that you know, that you saw that day. A. I seen this man right in front of Mr. Kimes, with a sweater on [identified as Louis Byrnes]. Well, I seen Mr. Barnwell. I seen the whole bunch there, but they are the only ones I seen who had anything to do with the fight.

"Q. Now, can you point out any others that were present? A. No, sir; not in that bunch, I can't.

"Q. Any of these men? A. I don't see any other man that I know of. They could have been there, and I not know it, because there was quite a crowd there, and I couldn't say about it.

"Q. What was the chief of police doing? A. Well, he didn't do anything for a while. He finally told Mr. Kimes and Mr. Adams to stand back; that he would take the man, and told this man to go with him; that he would try and take care of him, if he would go with him. * * *

"Q. You may state whether you saw the men that you testified about, Mr. Adams and Mr. Kimes, strike the big man. A. Yes, sir.

"Q. Did they do that in the presence of the chief of police? A. Yes, sir.

"Q. You may state what the chief of police did, if anything, or whether or not he did anything, to prevent that. A. He did not. He was just standing there up until the time he told them to let him alone.

"Q. But, at the time of the striking him, he did not do or say anything? A. He never took hold of them, or pushed them back, or anything."

There was testimony to support respondent's theory that he did not assault the railroad employees, or assist, abet, or encourage the same, and that he was a law-abiding citizen and trustworthy officer. It is not for us, of course, to weigh the evidence. That was for the jury. In view of the evidence, we would not be warranted in saying that it was not sufficient for the jury to find that Barnwell, not only aided and abetted the assault by standing by and failing to perform his duty, but that he actually encouraged the commission of the same.

The judgment as to all of the respondents is affirmed.